WISCONSIN PSYCHIATRIC SERVICES, LTD., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

WESS R. VOGT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1270–79, 1271–79.     Filed May 26, 1981.

*Robert J. Kalupa* and *John A. Hazelwood,* for the petitioners.
*Rogelio A. Villageliu,* for the respondent.

STERRETT, *Judge*: By statutory notices dated November 21, 1978, respondent determined deficiencies in petitioners' income taxes as follows:

| Docket No. | Petitioner | Taxable year ended | Deficiency |
|---|---|---|---|
| 1270–79 | Wisconsin Psychiatric Services, Ltd. .......... | Apr. 30, 1973 | $464.76 |
|  |  | Apr. 30, 1974 | 739.58 |
| 1271–79 | Wess R. Vogt .......... | Dec. 31, 1972 | 865.11 |
|  |  | Dec. 31, 1973 | 10,813.45 |
|  |  | Dec. 31, 1974 | 7,537.22 |
|  |  | Dec. 31, 1975 | 1,110.77 |

These cases have been consolidated for trial, briefing, and opinion.

After concessions, the issues remaining for our decision are: (1) Whether petitioner Vogt is entitled to deduct home office expenses (including depreciation) in the taxable years 1972 through 1975 under sections 162 and 167, I.R.C. 1954; (2) whether petitioner Vogt received dividend income in 1972, 1973, and 1974 from the personal use of an automobile furnished to him by Wisconsin Psychiatric Services, Ltd., and whether petitioner Wisconsin Psychiatric Services, Ltd., is entitled to deduct expenses relating to automobiles furnished to corporate officer-employees (including Wess R. Vogt) for the taxable years ended April 30, 1973, and April 30, 1974; (3) whether respondent erred in determining petitioner Vogt's interest income for the taxable year 1973; and (4) whether petitioner Vogt is entitled to a depreciation deduction on a Florida condominium for the taxable year 1973, and whether respondent erred in determining a 40-year useful life for the Florida condominium.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioner Wisconsin Psychiatric Services, Ltd. (Wisconsin Psychiatric), is a Wisconsin service corporation organized to provide psychiatric services at various locations in the Milwaukee, Wis., metropolitan area. During all of the years in issue, its principal office was located in Whitefish Bay, Wis. Petitioner Wisconsin Psychiatric filed Federal corporate income tax returns (Form 1120) for fiscal years ended April 30, 1973, and April 30, 1974, with the Internal Revenue Service Center at Kansas City, Mo.

Petitioner Wess R. Vogt (Vogt or Dr. Vogt) resided in Mequon, Wis., at the time of filing his petition herein. Petitioner Vogt filed a joint Federal income tax return with his nonpetitioning spouse for the calendar years 1972, 1973, 1974, and 1975. These returns were filed with the Internal Revenue Service Center at Kansas City, Mo.

During the taxable years in issue, petitioner Vogt was a psychiatrist-employee-officer of Wisconsin Psychiatric. Dr. Vogt's stock ownership percentage in the corporation was as follows:

| Year | Share | Year | Share |
|------|-------|------|-------|
| 1972 | 33% | 1974 | 50% |
| 1973 | 33% | 1975 | 50% |

The main floor and the basement of the Wisconsin Psychiatric offices at Whitefish Bay, Wis., were used for administrative work connected with the operation of the corporation. The second floor was used by other employees of Wisconsin Psychiatric, Drs. Steinhaus, Andersen, and Swartwout, to see patients. Petitioner Vogt also used the second floor to see patients on rare occasions or in an occasional emergency. Anything related to Wisconsin Psychiatric, including patient billing, insurance filing, collections, scheduling of appointments, and recordkeeping, was performed at the corporation's principal office at Whitefish Bay. The corporate office also took care of the above-stated administrative duties with respect to Dr. Vogt's patients who were being seen at his "home office."

During the period from 1972 through 1975, one of the doctors

employed by the corporation, Dr. Martin, suffered three heart attacks. For 3 or 4 months following each heart attack, petitioner Vogt saw the Wisconsin Psychiatric patients, formerly assigned to Dr. Martin, at the corporation's downtown Milwaukee office and at Elmbrook Memorial Hospital in Brookfield, Wis. In addition, petitioner Vogt's duties during the taxable years 1972 through 1975 included serving as Medical Director of the Ivanhoe Medical Hospital (at least 4 to 6 hours per week, seeing patients and developing a program for patients suffering from alcoholism), Medical Director of St. Mary's on the Hill Day Hospital Program (group therapy, teaching, individual sessions with inpatients and outpatients from 9 a.m. to 4 p.m., and developing and supervising the medical program), staff member of Columbia Hospital (seeing inpatients and attending meetings), and seeing outpatients at his home in Mequon, Wis. He also saw patients at the Pavilion Nursing Home until sometime in 1972. During a typical week in the years at issue, Dr. Vogt conducted 10 to 15 sessions at his home office with regular outpatients.

Petitioner Vogt purchased his residence in Mequon, Wis., on or about August 1971. Shortly after its acquisition, petitioner constructed an addition which consisted of a bedroom, a waiting room, and an office. A new entranceway to the waiting room was constructed to permit convenient access to the home office from outdoors. In addition, a separate sliding door was included in the office to permit patients to exit after their sessions without going through the waiting room. The office and the waiting room cover an area of approximately 360 square feet of the total residence's 3,500 square feet. This area constitutes 10.29 percent of the total available space in the residence.

During the taxable years in issue, Vogt's home office contained a fireplace, a couch, several lounge chairs, files, a desk, and a professional library. The office also contained a telephone, which had a different number than the telephones in the rest of the house. The locks on the office and waiting room doors required different keys than the locks in the rest of the house. Dr. Vogt had the only keys to the office locks. Neither Dr. Vogt nor his family made personal use of the home office.

For the years 1972 through 1975, Wisconsin Psychiatric did not reimburse petitioner Vogt for expenses incurred in maintaining a home office. In fact, prior to August 16, 1975,

Wisconsin Psychiatric had no formal policy encouraging the use of a home office. However, on that date, in a meeting of the board, it was decided:

Wisconsin Psychiatric Services previously requested that the physicians have Home Offices and is now reiterating this policy. All physicians working fro [sic] Wisconsin Psychiatric Services, Ltd., will have Home offices in which they can treat patients on a regular and on an emergency basis. Also where confidential records may be kept.

Although this declaration encouraged Dr. Vogt to continue to maintain his home office, it was not a condition of employment. Some of the staff psychiatrists of Wisconsin Psychiatric (other than Dr. Vogt) did not have home offices or did not use their home offices to see patients. Dr. Vogt admits that the use of his home office for seeing patients was somewhat for his own convenience, but also was for the convenience of patients and Wisconsin Psychiatric.

Home office expenses claimed by petitioner Vogt, and in issue herein, are as follows:

|  | *1972* | *1973* | *1974* | *1975* |
|---|---|---|---|---|
| 10 percent[1] of property expenses other than depreciation |  | $609 |  |  |
| 17.15 percent[1] of property expenses other than depreciation |  |  | $1,087.55 | $1,173.49 |
| Depreciation expense | $403.41 | 346 | 354.00 | 344.00 |
| Utilities | 55.00 |  |  |  |
| Telephone expense |  |  |  | 392.95 |
| Total, claimed, disallowed, and in issue | 458.41 | 955 | 1,441.55 | 1,910.44 |

During the taxable years 1972, 1973, and 1974, Wisconsin Psychiatric provided each of the shareholders, including petitioner Vogt, with a company-owned automobile or a company-leased automobile. This was not done for other employees. Instead, Wisconsin Psychiatric reimbursed such other employees (other than shareholders) who used their own automobiles in the conduct of business. Respondent determined that certain automobile expenses were nondeductible by the corporation and were constructive dividends to the shareholders.

Petitioner Vogt reported interest income of $965 on his 1973

---

[1]These percentages represent petitioner Vogt's calculation, as accepted by respondent, of business usage of the home during 1973, 1974, and 1975.

return. He was not required to itemize his sources of 1973 interest income on his individual income tax return. Dr. Vogt conceded underreporting interest income from a Swiss bank account in the amounts of $145.44 for 1972 and $373.95 for 1974. The parties agree that petitioner Vogt received $199.89 of interest income from a Swiss bank account for 1973. Respondent determined that petitioner Vogt's correct amount of interest income for 1973 was $1,164.89.

On December 28, 1973, petitioner Vogt purchased a condominium in Venice, Fla., for investment purposes. Vogt's condominium was a part-wood, part-stucco, brick structure with two levels on a concrete slab. It had no basement. It was 1 of about 15 condominiums in a unit, with 3 or 4 units located around a central swimming pool. It was located on the beach, about 100 feet from the Gulf of Mexico. During 1973, 1974, and 1975, petitioner Vogt leased the condominium to Badger Bearing Co., Milwaukee, Wis., which in turn subleased the condominium to other persons on a weekly basis. Respondent redetermined the depreciation allowable under section 167(a) for the years in issue.

## OPINION

The initial issue for our determination is whether petitioner Vogt may deduct expenses related to use of a portion of his residence as a "home office" under section 162.[2] Section 162(a) provides for the deductibility of all ordinary and necessary expenses paid or incurred in carrying on a trade or business. In addition, we must decide whether it was proper for petitioner Vogt to take a deduction for depreciation on his home office under section 167(a)(1), which allows a reasonable deduction for depreciation of property used in a trade or business. The burden is on petitioner to show that he is entitled to the deductions claimed on his returns. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.

With respect to the deduction under section 162(a), respondent at the outset claims that petitioner Vogt has not put forth sufficient evidence to substantiate his claim of using a portion of

---

[2]For taxable years beginning after Dec. 31, 1975, sec. 280A(c) provides statutory guidelines for allowance of the home office deduction. As the years in issue in the instant case are the calendar years 1972 to 1975, the provisions of sec. 280A are not applicable.

his residence as a "home office." Respondent claims that, in order to support his claimed deduction, petitioner Vogt must provide complete appointment books, without names of patients deleted, so that respondent can contact some of the patients named therein to verify alleged business use of the "home office." Petitioner Vogt, however, argues that confidentiality of the identity of psychiatric patients is essential for the protection of the psychiatrist-patient relationship and that the appointment books therefore should not be disclosed.

Respondent served a subpoena duces tecum on Dr. Vogt (as an individual) and a subpoena duces tecum on Wisconsin Psychiatric through Dr. Vogt, as president. Each of these subpoenas directed that Dr. Vogt bring all patient appointment records (whether belonging to Dr. Vogt or to Wisconsin Psychiatric) that would show which patients Dr. Vogt saw at his personal residence, and when he saw them there, during the taxable years 1972–75. These subpoenas were to be returned at the calendar call in this case which was on October 20, 1980. On that date, the subpoenas were quashed by this Court subject to the instruction that petitioners turn over the appointment records with the last names of the patients crossed out.

At the trial of this case, respondent repeatedly objected to witnesses' testimony on the grounds that denial of his request for a copy of the appointment books, including full names of all patients, made it impossible for him to develop rebuttal evidence or to prepare for effective cross-examination of witnesses. We consistently overruled respondent's objections. Respondent's arguments on brief have not persuaded us to change our view.

Even in our modern society, the decision to go to a psychiatrist is a personal and often difficult choice for a patient to make. We believe that there should be no social stigma attached to seeking the assistance of a psychiatrist, and in fact that there should be great respect for individuals who can recognize that they may have problems and who have the courage to seek help. Nonetheless, we would be shortsighted if we did not recognize that some people still view psychiatric patients as somehow "tainted" by their visits to appropriate medical specialists. Unfortunately, public knowledge of a patient's psychiatric care could have a detrimental impact on such patient's business and/or personal

affairs and might even hinder the progress made in therapy by such patient.[3] It is because we recognize this reality that we hold to our view expressed at trial.

Further, petitioner Vogt testified that he kept appointment books for the purpose of scheduling appointments, writing notes to himself about patients, and keeping records for billing purposes. The appointment books, with patients' names crossed out, were turned over to respondent. A sample month from the books was admitted into evidence.[4] This Court has examined the evidence and has heard the credible testimony of Dr. Vogt and his secretary. Both witnesses testified that a substantial number of patients were seen in the Mequon office, and we found their testimony convincing. Respondent has not offered a scintilla of evidence nor made any offer of proof, despite the invitation of the Court to do so, that would cast doubt on Dr. Vogt's testimony.

We must balance respondent's expressed need for the appointment books, including the full names of petitioner Vogt's patients, with Vogt's desire to protect the anonymity of his patients and to preserve the confidentiality of the psychiatrist-patient relationship. 2 J. Weinstein & M. Berger, Evidence, par. 504[05] (1980). On balance, we think that the need to preserve confidentiality in the psychiatrist-patient relationship outweighs the necessity to breach the confidentiality of the relationship in the circumstances of this case where there is not the slightest evidence that the records turned over were not truthful. We see no compelling need here for a fishing expedition. Therefore, we hold that petitioner Vogt need not turn over his appointment books, with the names of his patients, to respondent.

We now turn to the issue of whether petitioner Vogt was entitled to deduct expenses under sections 162 and 167 incurred

---

[3]Dr. Vogt testified that he believed that revealing patients' names to respondent, and thereby involving them in a purely personal matter between himself and the Internal Revenue Service, would breach the trust that had developed in his psychiatrist/patient relationships and would be medically unsound. He feared that it would be psychologically damaging to current patients and would "open up old wounds" of former patients.

[4]We note that Dr. Vogt's appointment books are a contemporaneous record of his business activity. The fact that they have been regularly kept from April 1972 until the present time and the fact that they were used for business purposes support their reliability and trustworthiness. See rule 803(6), Fed. R. Evid., for the exception to the hearsay rule for records kept in the regular course of business.

in maintaining a "home office." Dr. Vogt contends that his home office meets the standards for deductibility under section 162(a) as they existed prior to 1976, while respondent argues that the expenditures were personal in nature and therefore are nondeductible under section 262.[5] Prior to the enactment of section 280A in 1976,[6] we engaged in a weighing and balancing of all of the facts to determine if the expenditures satisfied the "ordinary and necessary" test of section 162(a). *Sharon v. Commissioner,* 66 T.C. 515, 524 (1976), affd. 591 F.2d 1273 (9th Cir. 1979). The inquiry focused on whether the expenses were essentially for the personal convenience of the taxpayer.[7]

In the instant case, Dr. Vogt testified that it was the policy of Wisconsin Psychiatric to locate offices in a variety of different neighborhoods around the Milwaukee metropolitan area where there was a need for psychiatrists. His home in Mequon was convenient for patients who lived in the northern Milwaukee suburbs in terms of physical location, access to highways, and ease of parking. In addition, Dr. Vogt testified that a portion of the addition that he had built onto his house was designed as and functioned as an office. The waiting room, which respondent would characterize as a hall, was 5 feet wide. For the comfort of

---

[5]Sec. 262 states that, except as otherwise expressly provided, no deduction is allowed for personal, living, or family expenses.

[6]Sec. 280A was added to the Internal Revenue Code by the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, to provide "definitive rules * * * governing the deductibility of expenses attributable to the maintenance of an office in the taxpayer's personal residence." S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 185; H. Rept. 94-658 (1975), 1976-3 C.B. (Vol. 2) 695, 852. Sec. 280A applies to taxable years beginning after Dec. 31, 1975.

[7]A "necessary" expense under sec. 162(a) has been interpreted by the Supreme Court to be one that is "appropriate and helpful" in "the development of petitioner's business." *Sharon v. Commissioner,* 66 T.C. 515, 524 (1976), affd. 591 F.2d 1273 (9th Cir. 1979). However, because we concluded in *Sharon* that this standard was insufficient for purposes of determining the deductibility of "home office" expenses under sec. 162(a), we turned our focus to sec. 262 and the relevant regulations thereunder. Sec. 1.262-1(b)(3), Income Tax Regs., provides:

Sec. 1.262-1. Personal, living, and family expenses.

(b) *Examples of personal, living, and family expenses.* * * *

(3) Expenses of maintaining a household, including amounts paid for rent, water, utilities, domestic service, and the like, are not deductible. A taxpayer who rents a property for residential purposes, but incidentally conducts business there (his place of business being elsewhere) shall not deduct any part of the rent. If, however, he uses part of the house as his place of business, such portion of the rent and other similar expenses as is properly attributable to such place of business is deductible as a business expense.

In essence, for a taxpayer to qualify prior to 1976 for a deduction under sec. 162(a), he had to prove that sec. 262 did not apply to his particular factual situation. See *Meehan v. Commissioner,* 66 T.C. 794, 807 (1976).

his patients, it was deliberately designed to be wider than another part of the addition, which truly functioned as a hallway. Furthermore, the addition intentionally contained two separate entrances. One allowed patients to enter the waiting room and the other permitted patients to exit directly from the office after their appointments. This two-door arrangement was specifically included in the addition to insure that the paths of entering and exiting patients would not cross. Finally, Dr. Vogt testified that he saw approximately 18 to 24 patients in an average week during the years in issue. Of this number, about 10 to 15 patients were seen at petitioner Vogt's home office. This constituted the major portion of his private outpatient practice.

This Court has observed the demeanor of the witnesses and evaluated all of the evidence. We found petitioner Vogt to be a highly credible witness and the supporting testimony of his secretary to be beyond question. We believe that, while there may have been an element of personal convenience in choosing to situate the corporation's office for the north-Milwaukee suburbs in Dr. Vogt's home, there were also substantial business reasons for doing so. Although Dr. Vogt's patients could have seen him elsewhere,[8] the Mequon office was the most convenient place for many of them. In addition, the evidence indicates that the portion of Dr. Vogt's home that is here in question was planned and furnished as a psychiatrist's office and was used exclusively for that purpose. It is clear that Dr. Vogt's home office was used for more than incidental conduct of his business. See *Meehan v. Commissioner*, 66 T.C. 794, 807 (1976); sec. 1.262–1(b)(3), Income Tax Regs., note 7 *supra*. After weighing the various business and personal reasons for maintaining the home office, we believe that Dr. Vogt is entitled to a deduction under section 162(a) for the expenses that he incurred with respect thereto, and a deduction under section 167(a) for depreciation on the portion of his residence that he used as a home office.[9]

---

[8]In fact, it is clear that each of Dr. Vogt's patients met him elsewhere on at least one occasion. It was Dr. Vogt's practice to arrange his first meeting with a patient at a location other than his home office (usually at St. Mary's Hill Hospital) so that he could assess the patient in a relatively secure setting before deciding whether to see the patient alone in Mequon. However, it is also apparent from the testimony that the corporation's other offices, especially the main office in Silver Spring, were used regularly by other doctors and therefore would not necessarily have been available when needed by Dr. Vogt.

[9]We note that, even under the post–1976 guildelines contained in sec. 280A, see notes 2 & 6

The next issue concerns the use of automobiles furnished by petitioner Wisconsin Psychiatric to certain of its employees. We must decide whether respondent's disallowance of a portion of the expenses related to automobiles furnished to corporate employees (including petitioner Vogt) was proper and to what extent, if any, Dr. Vogt constructively received dividend income in connection with the use of one such automobile. Respondent determined that the travel between Dr. Vogt's home and his first place of business, and from his last place of business back to home, were nondeductible commuting expenses. It is well settled that commuting costs are personal, nondeductible expenses. *Commissioner v. Flowers*, 326 U.S. 465 (1946). The parties agree that Dr. Vogt's travel between offices was deductible. See generally *Heuer v. Commissioner*, 32 T.C. 947, 953 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960). In order to find that Dr. Vogt may deduct the cost of travel to and from his home office, the taxpayer's home office must be his "principal office." See *Green v. Commissioner*, 59 T.C. 456, 459 (1972). The location of a taxpayer's "principal office" is a question of fact to be determined by evaluating all the evidence. In *Green*, we found that the petitioner's principal place of work was his Manhattan business office located at his employer's headquarters. Although he did some of his work in his den at home, his reasons for doing so were solely for his personal convenience. His expenses in traveling between his home and his Manhattan office were found to be nondeductible commuting expenses. 59 T.C. at 459. Thus, we will only permit a taxpayer to deduct travel between his home and other places of business where the use of his home office is so central to his business that trips from his home to his other places of business are in the nature of normal and deductible business travel.[10]

The record herein shows that Dr. Vogt conducted outpatient sessions both at St. Mary's on the Hill Hospital and at his home

*supra*, Dr. Vogt would be entitled to a deduction for expenses incurred in maintaining his "home office." As we conclude *infra*, Dr. Vogt's home office was his principal place of business. Sec. 280A(c)(1)(A). His office was exclusively used by patients in meeting with the taxpayer for their normal psychiatric sessions. Sec. 280A(c)(1)(B). Furthermore, inasmuch as the taxpayer's home office served the corporate purpose of establishing offices all around the Milwaukee metropolitan area, the office can be said to have been established for the convenience of the doctor's corporate employer.

[10]See *Fryer v. Commissioner*, T.C. Memo. 1974–77.

office. He also worked as Medical Director of Ivanhoe Hospital (4 to 6 hours per week), Medical Director of St. Mary's on the Hill Day Hospital Program (approximately 1 day per week), was on the staff of Columbia Hospital, and saw other patients at Pavilion Nursing Home, Elmbrook Hospital, and at the downtown and Brookfield offices of Wisconsin Psychiatric at various times during the years in issue. Dr. Vogt testified that he did the major portion of his outpatient work at his home office. His home office also was used for research and paperwork relating to his inpatients and as a place to keep treatment records on his patients. We therefore have no problem agreeing with Dr. Vogt's characterization of his home office as his "principal" office and focal point of his psychiatric practice. Accordingly, Dr. Vogt's trips to and from his home were not in the nature of commuting but rather were business trips between offices. We therefore hold that automobile expenses paid by Wisconsin Psychiatric were ordinary and necessary business expenses for which a deduction is allowed under section 162(a).

With respect to whether Wisconsin Psychiatric is entitled to deduct expenses for automobiles furnished to Drs. Vogt and Steinhaus, we note that no evidence was put forth relating to business use of the automobile by Dr. Steinhaus. Both the testimony at trial and the argument in petitioners' brief related solely to the automobile used by Dr. Vogt. Accordingly, respondent's determination must be sustained with respect to the car furnished to Dr. Steinhaus because Wisconsin Psychiatric has failed to carry its burden of proof on this matter. *Welch v. Helvering, supra.* With respect to Dr. Vogt, we note that, where expenses are deductible by the corporation, they cannot be constructive dividends to the recipient taxpayer. *Palo Alto Town & Country Village, Inc. v. Commissioner,* 565 F.2d 1388, 1391 (9th Cir. 1977). Since we found that the car was used by Dr. Vogt for business reasons, we conclude that Dr. Vogt did not have constructive dividend income during 1972, 1973, and 1974 as asserted by respondent.

We now turn to the issue of the proper amount of interest income for petitioner Vogt during 1973. In his statutory notice, respondent asserted deficiencies for underreporting of interest income from petitioner Vogt's Swiss bank account in the amounts of $145.44 for 1972, $199.89 for 1973, and $373.95 for 1974. At trial, petitioner Vogt conceded the deficiencies for 1972

and 1974. Accordingly, only the correct amount of total interest income for the taxable year 1973 is presently at issue.

On his 1973 return, petitioner Vogt reported $965 of interest income. At trial, the examining agent testified that he was able to verify the sources of $703.93 of interest income, which amount included the $199.89 from the Swiss bank account. Petitioner Vogt claims that the interest from the Swiss bank account was already included in the 1973 interest income that he declared on his return and that he made an error in preparing his return. He now seeks a downward adjustment of $261.07 in his 1973 interest income. Dr. Vogt was not required to itemize the sources of his interest income on his return. He has not put forth any evidence to show how he arrived at the $965 reported interest income amount. Furthermore, Dr. Vogt admitted understating the amount of interest that he received from the Swiss bank account in the years prior and subsequent to 1973. He failed to prove that he had already accounted for the income from that account in the $965 declared on his 1973 return. Accordingly, we find that he has failed to carry his burden with respect to the taxable year 1973, and he therefore is not entitled to the downward adjustment that he seeks.

On the other hand, we do not think that respondent's position, that the subject $199.89 of interest should be added to the reported $965 amount, has merit either. The testimony of the examining agent makes it apparent that the $199.89 interest at issue was included in the interest income figure reported on Vogt's original 1973 income tax return ($965). Based on our analysis of the record, which admittedly was vague on this point, we find that $965 is the proper amount of Vogt's interest income for the 1973 taxable year.

Finally, with respect to petitioner Vogt's Florida rental condominium, respondent asserts that (1) petitioner Vogt should have used a useful life of 40 years, rather than 25 years, in determining depreciation on the condominium, and (2) petitioner Vogt was not entitled to a depreciation deduction on the condominium for any more than 4 days for the taxable year 1973. With respect to the useful life issue, we note that Vogt initially used a 30-year useful life for calculating depreciation on the total cost of the condominium ($36,125) on his 1973 return. However, beginning with his 1974 taxable year, he calculated depreciation using a 25-year useful life for the building ($34,447)

and a 4-year useful life for equipment ($1,678). He continued this depreciation pattern on his 1975 return. Petitioner Vogt testified that his change to a 25-year useful life was based on a conversation that he had with another local condominium owner[11] and was reasonable for a wood, brick, and stucco structure located just 100 feet from the Gulf of Mexico. Respondent, applying Rev. Proc. 62–21,[12] claimed that the proper useful life for petitioner Vogt's condominium was 40 years.

Petitioner Vogt has not put forth any evidence to substantiate his change in useful life or his bifurcation of total cost on his 1974 return. The record shows no clear and convincing basis for redetermining useful life. We find that petitioner Vogt has failed to carry his burden of proof with respect to this change.[13] Therefore, petitioner Vogt is entitled to use no less than a 30-year useful life on his 1974 return.

Even so, we are not satisfied that respondent's estimate of a 40-year useful life adequately allows for the fact that the condominium here in issue was located so close to the Gulf of Mexico that the salt air therefrom would hasten deterioration of the structure. Applying the so-called *Cohan* rule, under which

---

[11]At trial, the Court refused to admit petitioner Vogt's testimony of the opinion of another condominium owner as evidence that Vogt's condominium actually had a useful life of 25 years. Rather, the other owner's opinion was admitted only as evidence of how Vogt selected the revised useful life figure.

[12]Rev. Proc. 62–21, 1962–2 C.B. 418, 419–420, provides for specified useful lives for certain types of buildings. The indicated useful life includes the structural shell of the building and all integral parts thereof, including heating, plumbing, air-conditioning, fire prevention and power requirements, and elevators and escalators. The useful life for "apartments" was set at 40 years, and the useful life for "dwellings" was set at 45 years.

[13]Sec. 1.167(a)–1(b), Income Tax Regs., provides, in pertinent part, as follows:

Sec. 1.167(a)–1. Depreciation in general.

(b) *Useful life.* For the purpose of section 167 the estimated useful life of an asset * * * is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, * * * (3) *the climatic and other local conditions peculiar to the taxpayer's trade or business,* and (4) the taxpayer's policy as to repairs, renewals, and replacements. * * * If the taxpayer's experience is inadequate, the general experience in the industry may be used until such time as the taxpayer's own experience forms an adequate basis for making the determination. The estimated remaining useful life may be subject to modification by reason of conditions known to exist at the end of the taxable year and shall be redetermined when necessary regardless of the method of computing depreciation. However, estimated remaining useful life shall be redetermined only when the change in the useful life is significant and there is a clear and convincing basis for the redetermination. * * * [Emphasis added.]

we may estimate the useful life of the condominium (*Honodel v. Commissioner*, 76 T.C. 351 (1981)), we hold that petitioner Vogt is entitled to use a useful life of 35 years for each of the taxable years in issue. *Cohan v. Commissioner*, 39 F.2d 540, 544 (2d Cir. 1930).

Turning to respondent's claim that petitioner Vogt should not be permitted a depreciation deduction for 1973, we note that section 1.167(a)–10(b), Income Tax Regs., provides that a proportionate part of 1 year's depreciation is allowable for that part of the first year during which an asset was in service. In this case, petitioner Vogt purchased the condominium for rental purposes on December 28, 1973. We find that Vogt put the condominium into service in 1973. He therefore is entitled to a depreciation deduction for the 4 days in which the condominium was in service during the taxable year 1973.

Concessions having been made,

*Decisions will be entered under Rule 155.*