CHARLES W. WALKER AND CATHE R. WALKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Walker v. Commissioner
Docket No. 20919-91
United States Tax Court
T.C. Memo 1993-311; 1993 Tax Ct. Memo LEXIS 313; 66 T.C.M. (CCH) 130; July 15, 1993, Filed *313 Decision will be entered under Rule 155. Charles W. Walker and Cathe R. Walker, pro sese. For respondent: Michael Lloyd. PATE
PATE
MEMORANDUM FINDINGS OF FACT AND OPINION PATE, Special Trial Judge: This case is assigned pursuant to the provisions of section 7443(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' 1986, 1987, and 1988 Federal income taxes of $ 1,185, $ 1,236, and $ 706, respectively. After concessions by petitioners, the issues for our decision are: (1) Whether Charles Walker (hereinafter petitioner) was self-employed and, therefore, may report his gross income on Schedule C; (2) whether a portion of petitioner's gross income constitutes equipment rental; and (3) whether petitioner may deduct truck expenses which he paid for traveling to various locations in the Black Hills National Forest. *314 Petitioners' earned income credit will be automatically adjusted based upon our resolution of the above issues. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Charles W. Walker timely filed joint income tax returns with his wife, Cathe R. Walker, for 1986, 1987, and 1988. They resided in Hill City, South Dakota, at the time they filed their petition. Petitioner is a professional "faller" or "cutter", cutting trees in the Black Hills National Forest (hereinafter Black Hills). During the years in issue, petitioner worked exclusively for Woodward Logging, a company located in Custer, South Dakota. Woodward Logging was owned and operated by Jesse Woodward (hereinafter Woodward), who contracted with various lumber mills to cut and deliver logs from certain timber "sales". A "sale" is a parcel of land, usually composed of hundreds of acres, in which the right to remove timber is put up for bid by the United States Department of Agriculture Forest Service. When a lumber mill wins a bid, it generally contracts with firms such as Woodward Logging to go onto the sale to cut the trees and deliver them to the mill. During the years in issue, Woodward Logging *315 contracted with several lumber mills, so it generally was working more than one sale at a time. At times, it simultaneously worked up to six sales. To do this, Woodward Logging maintained two crews, a mechanical logging crew and a conventional logging crew. The mechanical logging crew operated large machines which, if the terrain permitted, could snip the trees and process them mechanically. The conventional logging crew handled the rest of the sale. It was composed of cutters (who cut and trimmed the logs), skidders (who collected and dragged the logs to loading points), and truck drivers (who hauled the logs to the lumber mills). Petitioner was a cutter in Woodward Logging's conventional logging crew. Petitioner operated as a cutter under the name of C & C Contracting. During the years in issue, he worked exclusively for Woodward Logging on the sale or sales to which he was assigned. Petitioner was not required to work any specific hours or days, but was limited by weather and the time frame in which the sale had to be cut. He was paid on an hourly basis. He was not provided with any sick leave, vacation time, or health insurance, nor was he eligible to participate in *316 any retirement plan sponsored by Woodward Logging. Further, petitioner was liable for any damage he did to the sale, such as to fences or power lines, and was required to pay for the cost of repairing those damages. To render his services, petitioner furnished his own truck, tools, fuel, and supplies. During the years in issue, petitioner drove a 1983 Chevy Blazer and a 1977 Toyota Landcruiser in which he carried his tools. His tools included, among other things, three chainsaws, an axe, a long-handled shovel, extra chainsaw bars and chains, repair parts, small tools, extra protective clothing, and a fire extinguisher. The extra tools and repair parts were necessary because the sales were so far away from the nearest town that it was not feasible to get the equipment repaired during the course of a working day. He also carried extra gasoline for his truck, and fuel and lubrication for his saws. Petitioner had contact with Woodward several times a week to ascertain the location of the sale to which he was assigned. He worked approximately 13 sales in 1986, 15 sales in 1987, and 24 sales in 1988. Once he reached the site assigned, he would take the tools he needed and head *317 up into the hills where he cut trees, trimmed them, and marked them to lengths. In addition, although not required to do so, petitioner reported to Woodward the hours worked by his fellow crew members and picked up and distributed their paychecks on a weekly basis. Petitioner drove a four-wheel drive vehicle to get to his initial site and to travel from one site to another. This type of vehicle was necessary because of the rough terrain, the inclement weather, and the relatively poor roads petitioner had to travel to reach the site assigned to him. The distance from Hill City to the various sites he worked during the years in issue varied between 18 to 60 miles each way. After the workday was over, petitioner checked his equipment to see what needed to be replaced. Petitioner spent approximately 7 hours per week in the workshop adjacent to his residence maintaining and repairing his equipment. When his tools and equipment were not in use, petitioner generally stored them in his vehicle, except on the weekends when he kept them in his workshop. Petitioner kept a daily record of his working hours and, at the end of the week, submitted them to Woodward. He was paid at the rate *318 of $ 14 per hour. Woodward Logging reported on Form 1099 that 60 percent of the amount paid to petitioner was equipment rental and the remaining 40 percent was nonemployee compensation. On his 1986 and 1987 Federal income tax returns, petitioner reported gross income and expenses as follows: 1986
1987
Schedule C
Gross Income
$  8,289
[2] $  7,618
Expenses
7,900
7,712
Net
$   389
$   (94)
Schedule E
Gross Income
$ 10,819
$ 15,835
Equipment Expenses
6,414
7,646
Net
$  4,405
$  8,189
Because of ongoing inquiries from respondent, as well as other governmental agencies, [3] petitioners were unsure of the proper method for reporting their income for 1988. They attached a letter to their income tax return for 1988 explaining their dilemma and reported thereon wages of $ 14,525 and $ 4,349 of reimbursed travel expenses, and deducted $ 3,212 in business expenses and $ 4,349 in reimbursed expenses. *319 OPINION Schedule C
We must first decide whether petitioner correctly reported his income and expenses as a self-employed individual. In this case, respondent is taking a rather unusual position, that petitioner was an employee rather than self-employed. At this juncture, petitioner is, quite frankly, totally confused and asks us to determine how his income should have been reported. To be reportable on Schedule C, a taxpayer's income must arise from a trade or business, other than that of being an employee. If a taxpayer's earnings arise from working as an employee, they must be reported as wages. Whether an individual is an "employee" is determined under applicable common law rules. Secs. 1402(d) and 3121(d)(2). Section 31.3401(c)-1(b), Employment Tax Regs., defines the employer/employee relationship as follows: (b) Generally the relationship of employer and employee exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to *320 the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is not an employee.
Courts have looked to various factors to determine whether an employment relationship exists between the parties. Relevant factors include: (1) The amount of control the principal exercises over the details of the work; (2) which party invests in the work facilities; (3) who has the opportunity for profit or loss; (4) whether the principal has the right to discharge the individual; *321 (5) whether the work is an integral part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believe they are creating. United States v. Silk, 331 U.S. 704, 716 (1947); Professional & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988); Simpson v. Commissioner, 64 T.C. 974, 984-85 (1975). There is no one controlling factor. Rather, we must look at all of the facts and circumstances of each case. Sec. 31.3401(c)-1(d), Employment Tax Regs.
The present case, as in almost all of the others, has factors going both ways. After weighing those factors, we find that petitioner was self-employed during the years in issue. One of the most important factors in our consideration is that, except for designation by Woodward as to the sale upon which petitioner would work, petitioner was free to run his job as he saw fit. He was able to set his own hours and days of work, determine the most efficient method to cut and trim the timber, determine the method in which *322 he would accomplish those tasks, and set the sequence in which those tasks were performed. Petitioner supplied the equipment, tools, fuel, and supplies to accomplish his work. He determined which type of equipment he would work with and, consequently, had to absorb the relative costs associated therewith. As seen from the amounts petitioner deducted on Schedule C and E, his expenses were substantial in amount, especially when compared with his gross income. Moreover, if petitioner damaged any portion of the sale, such as a fence or power line, he was responsible for its repair, subjecting him to potential loss if he did not perform his job properly. Further, although petitioner was paid on an hourly basis, Woodward did not provide petitioner any fringe benefits. He received no sick leave, paid vacation time, or health or disability benefits. Moreover, there is no indication that Woodward sponsored or contributed to any retirement plan in which petitioner could participate. Admittedly, petitioner did provide some services to Woodward not ordinarily within the scope of the duties of a self-employed contractor. For instance, he supervised other members of the crew, made onsite *323 decisions concerning how they would conduct the work, and kept track of the hours worked by them. However, Woodward asked petitioner to perform these services for him, not as a prerequisite to accomplishing his work, but because of petitioner's 40 years of experience as a cutter. On balance then, we find that petitioner is a skilled craftsman who was engaged to achieve an end result, that is to cut timber in certain geographic locations and within a certain time frame designated by Woodward Logging, but without specific direction from Woodward Logging as to how to accomplish the work. Based on these facts, we hold that petitioner was self-employed during the years in issue and, accordingly, is required to report his gross income on Schedule C. [4]
*324 Schedule E
Woodward Logging reported on Form 1099 that 60 percent of the amount it paid to petitioner was equipment rental. Consequently, petitioner reported that portion of his gross income on Schedule E. However, there is no evidence in the record that petitioner rented any vehicles or equipment to Woodward Logging. Rather, petitioner supplied and paid for the truck and all of the equipment he needed to perform the services he rendered, and the truck and equipment that he owned, he used himself in the performance of such services. A taxpayer may not determine the nature of his income merely by using a particular form, or by labeling it as he wishes, but must report his income based on the economic realities of the situation. See Frank Lyon Co. v. United States, 435 U.S. 561 (1978); Upham v. Commissioner, 923 F.2d 1328, 1335 (8th Cir. 1991), affg. T.C. Memo. 1989-253. Because petitioner did not rent any equipment to Woodward, it did not pay petitioner for equipment rental. Therefore, there is no justification for segregating any of the income received from Woodward Logging as "equipment *325 rental" on a separate Schedule E. Consequently, we hold that all of the income received by petitioner from his business as a cutter, less all of the expenses incurred in performing such services, should have been reported on Schedule C. Truck Expenses
During the years in issue, petitioner used two four-wheel drive vehicles to cut logs for Woodward Logging and deducted all of the expenses including depreciation attributable to those vehicles from his gross income. In the notice of deficiency, respondent determined that petitioner was entitled to deduct 60 percent of his claimed deduction for the expense of traveling during the day between sites but disallowed 40 percent, as commuting expenses, for the expense of traveling each day from Hill City to the first site to be cut and from the last site back to Hill City. Petitioner claims that his truck expenses are deductible because they constitute an ordinary and necessary business expense of carrying on his business of cutting timber. Section 162(a) provides a deduction for all the ordinary and necessary expenses paid or incurred in carrying on a trade or business. Sanford v. Commissioner, 50 T.C. 823, 826 (1968), *326 affd. per curiam 412 F.2d 201 (2d Cir. 1969). An ordinary and necessary expense is one which is appropriate and helpful to the taxpayer's business and which results from an activity which is common and accepted practice. Deputy v. du Pont, 308 U.S. 488, 495 (1940); Boser v. Commissioner, 77 T.C. 1124, 1132 (1981), affd. without published opinion (9th Cir. 1983); Ford v. Commissioner, 56 T.C. 1300, 1306 (1971), affd. per curiam 487 F.2d 1025 (9th Cir. 1973). Petitioner used his truck to travel from Hill City to various sites in the Black Hills to cut timber. As a sale was generally composed of hundreds of acres, it follows that petitioner had to drive to different uncut sites each day. Petitioner also had to go from one site to other sites during the day, but, since respondent has already allowed the cost of this traveling as an ordinary and necessary business expense, it is not at issue here. With regard to petitioner's cost of traveling to his first site in the morning and from his last site in the afternoon however, respondent maintains *327 that such expenses constituted "commuting" expenses and therefore are not deductible. It is well settled that the cost of commuting between one's residence and regular place of employment is a nondeductible personal expense. Sec. 262; Commissioner v. Flowers, 326 U.S. 465, 473-474 (1946); secs. 1.162-2(e) and 1.262-1(b)(5), Income Tax Regs. In Turner v. Commissioner, 56 T.C. 27, 33 (1971) (quoting from Heuer v. Commissioner, 32 T.C. 947, 953 (1959), affd. 283 F.2d 865 (5th Cir. 1960)), we defined the term "commuting" as: travel between the petitioner's residence and points of assignment and return * * *.
However, the cost to a taxpayer of traveling between his residence which is also his principal place of business and his first job site and return may be deductible. See Adams v. Commissioner, T.C. Memo. 1982-223, affd. without published opinion 732 F.2d 159 (7th Cir. 1984), and cases cited therein. As stated in Wisconsin Psychiatric Services, Ltd. v. Commissioner, 76 T.C. 839, 849 (1981), *328 a deduction is allowable to a taxpayer for- travel between his home and other places of business where the use of his home * * * is so central to his business that trips from his home to his other places of business are in the nature of normal and deductible business travel. [fn. ref. omitted.]
Using the above test, we find that petitioner's workshop and surrounding premises was his principal place of business. He used it to perform every business function necessary to his business of cutting timber except for the actual cutting of the trees. He stocked his parts there, held his fuel supplies there and, except when they were in use, stored his vehicles and equipment there. He performed all necessary repairs and maintenance to his equipment there. He also performed all office and clerical duties there, including receiving his assignments, keeping track of, paying for and recording his expenses. Before leaving in the morning, petitioner usually telephoned Woodward Logging to receive his assignments, checked his equipment, replenished his fuel supplies, replaced missing spare parts, and loaded his truck. In the evenings, he returned so that he could perform necessary *329 maintenance and store his truck and equipment in a secure place. Petitioner's workshop was absolutely essential to his business. He could not have performed the above related tasks without the use of his workshop and surrounding premises. Equipment simply cannot be repaired out in the middle of the forest, where petitioner does not have access to specialized tools, equipment, and the electricity necessary to make them run. Moreover, the workshop protected petitioner and his equipment from the inclement weather allowing the repairs to be done. It was the only place he had the facilities necessary to maintain his equipment, without which he could not cut any timber. In contrast, petitioner went to dozens of cutting sites in the Black Hills. He was at each site for a relatively short period of time. Moreover, he had no choice as to which cutting site he would work at nor for what length of time he would work at such site. When comparing the importance of any of the many sites on which petitioner cut timber with his workshop and surrounding premises where he performed all of the other necessary functions of his business, and spent more time than at any of his cutting sites, it *330 becomes obvious that petitioner's workshop was his principal place of business. See Adams v. Commissioner, T.C. Memo. 1982-223, affd. without published opinion 732 F.2d 159 (7th Cir. 1984). Respondent argues, however, that we should view the Black Hills as a whole; that the Black Hills was petitioner's principal place of business and therefore travel to and from his residence constituted commuting. She analogizes petitioner's traveling to that of a taxpayer living in Chicago, who would be held to be commuting to any place within that metropolitan area. She states that the metropolitan area of Chicago is greater than the area of the Black Hills, and, therefore, we should hold that any place petitioner traveled to in the Black Hills first in the morning or last in the evening should be considered a commute. However, even assuming that respondent is correct in calculating that the metropolitan area of Chicago is larger than the Black Hills (and we make no finding in this regard), in her analogy respondent assumes that the taxpayer in Chicago is going from his residence to a place of business. However, in petitioner's case, *331 the travel starts at his principal place of business and goes to another place of business, for a business purpose. Therefore, it is not a "commute". Moreover, in her argument, respondent assumes that the entire city of Chicago (as well as the Black Hills) is the taxpayer's principal place of business. However, each location in which the taxpayer does business within the city of Chicago (as well as the Black Hills) is a separate place of business. Therefore, we consider each cutting site in the Black Hills to be a separate place of business for petitioner, [5] and, in doing so, conclude that not one of these sites was critical, or indeed, very important to petitioner's business. Basically, respondent is arguing that we should find that petitioner's principal place of business was someplace that he worked temporarily *332 in the Black Hills forest. We rejected this type of premise in Peat Oil and Gas Associates v. Commissioner, T.C. Memo. 1993-130, where the taxpayer argued that its principal place of business was at the location of its oil and gas wells in Ohio, rather than at its offices in New York. In that case, we observed that: It is difficult to conceptualize a principal place of business that is not the place where the * * * [business] maintained contact with the outside world. * * *. To agree with petitioners, we would have to hold that the principal place of business of these * * * [businesses] was at an indefinite location in the State of Ohio, where there were no employees, or offices * * * where the * * * [business] could be reached. A principal place of business should at least have a mailing address.
So, too, in this case, if we were to adopt respondent's reasoning, we would have to find that petitioner's principal place of business was some indefinite location in the Black Hills forest, where petitioner worked temporarily and probably would never work again, and where there was no facility where he could be reached, or to which a letter could *333 be mailed. We have already rejected such a concept in Peat Oil and Gas Associates v. Commissioner, supra.
Finally, respondent argues that since petitioner is not claiming that he has an office in his home for which a deduction is allowable under section 280A, petitioner's home is not his principal place of business and, therefore, travel from his residence to his first site in the morning constitutes commuting. As explained in her brief- Respondent maintains, and for this reason IRC section 280A is discussed, that unless a taxpayer qualifies for IRC section 280A, the taxpayer cannot claim the home as a job site because to so claim would allow the taxpayer to circumvent IRC section 280A and thus transform nondeductible IRC section 262 commuting expenses into deductible transportation expenses under IRC section 162(a).
However, the fact that petitioner did not claim a deduction under section 280A may be attributable to his failure to fulfill other requirements under that section (other than the lack of a "principal place of business" requirement). For instance, petitioner may have failed to qualify under section 280A because he did not *334 use a part of his residence exclusively for business. See sec. 280A(c)(1). Therefore, respondent's conclusion is just not warranted; petitioner need not raise an issue under section 280A in order for us to find that his residence was his principal place of business. To summarize, petitioner's truck expenses are deductible under section 162(a) if they constitute ordinary and necessary business expenses. In producing gross income as a cutter, petitioner paid truck expenses to transport him from his workshop, which we have found to be his principal place of business, to various sites in the Black Hills to cut timber. We find that those expenses are ordinary and necessary and, accordingly, deductible under section 162(a). Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Although petitioner reported gross income on Schedule C of $ 7,618, Woodward Logging reported thatit paid petitioner only $ 7,318. The record does not contain any explanation for this difference.↩
3. The record indicates that South Dakota considers loggers self-employed for unemployment insurance purposes and employees for workmen's compensation purposes.↩
4. Respondent did not determine that petitioner was liable for self-employment taxes in the notice of deficiency, nor did respondent argue at trial (even alternatively) that petitioner was subject to self-employment taxes. Hence, we do not consider petitioner's liability therefor. Lewis v. Commissioner, T.C. Memo. 1989-282; Meredith v. Commissioner, T.C. Memo. 1984-651; see Minter v. Commissioner, T.C. Memo. 1991-448; Brecht v. Commissioner, T.C. Memo. 1981-688; Smith v. Commissioner, T.C. Memo. 1981-644↩.
5. Indeed, in effect, respondent admitted that each cutting site was a separate place of business when she allowed petitioner to deduct the cost of traveling between such sites as a business expense.↩