T.C. Summary Opinion 2011-127


UNITED STATES TAX COURT


BOBBY S. AND SARA E. ROBERTS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 5214-09S, 3421-10S.    Filed October 27, 2011.


<u>Jason J. Alley</u>, for petitioners.

<u>Emile L. Hebert, III</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  These consolidated cases were
heard pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time that the petition was filed.[1]
Pursuant to section 7463(b), the decision to be entered is not

_____

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for the
years in issue, and all Rule references are to the Tax Court
Rules of Practice and Procedure.

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent sent notices of deficiency to petitioners determining deficiencies, additions to tax, and accuracy-related penalties with respect to petitioners' individual Federal income taxes for the 2004, 2005, and 2006 taxable years as follows:[2]

| | | Additions to Tax/Penalty Secs. | | |
| Year | Deficiency | 6651(a)(1) | 6651(a)(2) | 6662(a) |
|------|-----------|------------|------------|---------|
| 2004 | $9,895 | $1,757.25 | $1,796.30 | $1,979.00 |
| 2005 | 9,308 | -0- | -0- | 1,861.60 |
| 2006 | 3,954 | -0- | -0- | 790.80 |

The sole issue for decision is whether petitioners are entitled to deduct transportation expenses under section 162(a), incurred and paid by Bobby S. Roberts for travel between his home office in Roanoke, Alabama, and his testing facility in Metairie, Louisiana.[3] The resolution of this issue turns on whether Bobby S. Roberts' "tax home" was in Roanoke, Alabama, or in Metairie, Louisiana.[4]

---

[2] Two notices of deficiency were sent to petitioners. The first notice, which was dated Feb. 9, 2009, related to tax years 2004 and 2005. The second notice, which was dated Jan. 20, 2010, related to tax year 2006. Petitioners timely filed petitions with this Court in both instances, and the two cases were subsequently consolidated for trial, briefing, and opinion.

[3] All other issues presented by the notices of deficiency have been conceded or otherwise resolved by the parties.

[4] Respondent concedes that Sara E. Roberts' tax home was in Roanoke, Alabama, during the tax years in issue.

Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts, as supplemented, and accompanying exhibits. Petitioners resided in the State of Alabama when the petitions were filed. All references to petitioner in the singular are to petitioner Bobby S. Roberts.

After returning home from the Vietnam War, petitioner attended Auburn University (Auburn) in Alabama where he completed undergraduate and graduate studies in the Department of Rehabilitation and Special Education. Upon petitioner's graduation with a major in vocational evaluation, Auburn hired him as a faculty member to coordinate the undergraduate rehabilitation program. Between 1974 and 1979, petitioner lived in Alabama and worked as a faculty member for Auburn.

In 1979, petitioner was recruited by Louisiana State University (LSU) to develop and teach courses at its Health Sciences Center in New Orleans. Petitioner accepted the job, moved to the New Orleans area, and worked at LSU from 1979 to 1985.

In 1985, petitioner resigned from his position at LSU and worked as a consultant with various hospitals in the New Orleans area until finally, in late 1988, he and his family returned to Alabama, where they settled into a home in Roanoke that

petitioner had purchased several years earlier. At all relevant times thereafter, petitioners resided in Roanoke, Alabama (Roanoke).

From late 1988 to 1990, petitioner again worked for Auburn, but during this time as an adjunct faculty member. He was also employed as a vocational expert with the Social Security Administration where he provided expert testimony at administrative hearings that were conducted in both Alabama and Georgia.

In 1990, petitioner was recruited by Work Recovery, Inc. (Work Recovery), to help develop rehabilitation facilities throughout its southeast rehabilitation region (Southeast Region), which consisted of Kentucky, Tennessee, North Carolina, South Carolina, Georgia, Florida, Alabama, and Mississippi.[5] Petitioner worked from his home in Roanoke, which was centrally located within the Southeast Region.

Although recruited by Work Recovery to develop the Southeast Region, at one point during his employment petitioner assisted in the development of a rehabilitation facility in Metairie, Louisiana, located in the company's southwest rehabilitation region. Petitioner, however, never operated or worked out of the facility in Metairie. Once the Metairie facility was completed, petitioner returned to his work developing and researching

_____

[5] Work Recovery, Inc., was previously named Valpar Corp.

facilities in the Southeast Region.  One such facility that petitioner worked on was Piedmont Hospital in Atlanta, Georgia.

In 1997, Work Recovery filed for bankruptcy and petitioner, finding himself unemployed, started a sole proprietorship involved in vocational rehabilitation and evaluation services. Because of his proximity to Auburn and his contacts there, petitioner planned to continue working from his home office, offering vocational rehabilitation services in the same Southeast Region originally targeted by Work Recovery.  Consequently, petitioner began working again with Piedmont Hospital in Atlanta, Georgia, and also with the director of the State rehabilitation facility in Alabama.

Shortly after the creation of his sole proprietorship, petitioner began receiving referrals from the Louisiana area requesting his services.  Some of these referrals requested that petitioner provide testing services in addition to other evaluation services.  Petitioner informed these referral sources that he did not have a testing facility or provide testing services as part of his business.  After receiving additional requests, however, petitioner began to look into providing testing as an additional service and ultimately decided to obtain a facility for this purpose.  In November 1997, petitioner signed a lease for a building in Metairie, Louisiana, that became a

testing facility for his business. At all times relevant thereafter, petitioner had a facility for testing in Metairie.

During 2004, 2005, and 2006, petitioner worked from a space in his residence that he converted to a modest home office. He provided rehabilitation cost analyses, loss of earnings analyses, and expert opinion assessments entirely from his home office. No testing was required to provide these services, and all work, including the composition of a final expert report, was performed from petitioner's home office in Roanoke.

During the tax years in issue, petitioner primarily traveled to Metairie if a case required testing or if a deposition or court appearance was scheduled. When staying overnight in Metairie, petitioner minimized his expenses, cooking food in a small microwave oven and sleeping on a sofa bed in the waiting room at his testing facility. Consequently, petitioner only deducted his transportation expenses. Petitioner typically arrived in Metairie on a Monday afternoon, and returned to Roanoke either on a Wednesday or a Thursday morning. If he had no work to complete in Metairie, petitioner sometimes returned to Roanoke on a Tuesday. While in Roanoke, petitioner worked Saturdays, and Sunday afternoons, after teaching Sunday school and engaging in other personal activities.

If a case required testing, petitioner would travel to his testing facility in Metairie to perform the test. The testing

process only took 4 hours per client on average. In contrast, the evaluation and reporting process in these cases, performed entirely from petitioner's home office, took an average of 7 to 8 hours per client.

Petitioner also traveled to Louisiana to give testimony in court or at a deposition. When he was scheduled to give testimony, however, petitioner would often arrive in Louisiana only to discover that the case was settled or the deposition was canceled. Many times when this occurred, petitioner would return to Roanoke early and work from his home office.

In 2004, petitioner made 47 round-trip flights and a single one-way flight between Birmingham, Alabama, and New Orleans, Louisiana.

In 2005, petitioner made 33 round-trip flights between Alabama and Louisiana. After Hurricane Katrina devastated New Orleans in August 2005, Southwest Airlines canceled direct flights between Birmingham and New Orleans, and petitioner's testing facility sustained heavy damage. Thus, petitioner began using his vehicle to travel to Metairie, hauling equipment that he needed to make repairs. Consequently, in 2005, petitioner made 14 round trips with his vehicle, driving from his home office in Roanoke, to Metairie.

Unfortunately, because of the extent of the damage sustained, petitioner was forced to eventually abandon his old

testing facility and lease a new facility in 2006. From
September 2005 to October 2006, no testing was performed, and
petitioner conducted all of his work from his home office,
traveling to Metairie primarily to repair or otherwise relocate
his testing facility. Consequently, in 2006, petitioner made 50
round trips in his vehicle from his home office to Metairie and
only conducted three tests that year.

## Discussion[6]

Generally, expenditures for transportation between a
taxpayer's home and place of business are considered personal
expenses and are not deductible. See sec. 262; Fausner v.
Commissioner, 413 U.S. 838 (1973); secs. 1.162-2(e), 1.262-
1(b)(5), Income Tax Regs. Transportation expenses, however, may
be deducted under section 162(a)(2) if they are: (1) Ordinary
and necessary; (2) incurred while "away from home"; and (3)
incurred in pursuit of a trade or business. Commissioner v.
Flowers, 326 U.S. 465, 470 (1946). The reference to "home" in
section 162(a)(2) means the taxpayer's "tax home".[7] Mitchell v.
Commissioner, 74 T.C. 578, 581 (1980); Foote v. Commissioner, 67

---

[6] Our decision is made without regard to the burden of
proof.

[7] The vocational "tax home" concept was first construed by
this Court in Bixler v. Commissioner, 5 B.T.A. 1181, 1184 (1927),
and has been steadfastly upheld by this Court. See, e.g., Horton
v. Commissioner, 86 T.C. 589 (1986); Leamy v. Commissioner, 85
T.C. 798 (1985); Foote v. Commissioner, 67 T.C. 1 (1976); Kroll
v. Commissioner, 49 T.C. 557 (1968).

T.C. 1, 4 (1976); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968).

This Court has held as a general rule that the location of a taxpayer's principal place of business is his tax home, not the location of the taxpayer's personal residence. Mitchell v. Commissioner, supra at 581; Kroll v. Commissioner, supra at 561-562. When a home office, however, qualifies as the taxpayer's principal place of business under section 280A(c)(1)(A), then the taxpayer's personal residence is considered his tax home and expenses paid or incurred traveling between that residence and another workplace may be deductible. See Strohmaier v. Commissioner, 113 T.C. 106, 113 (1999); Wis. Psychiatric Servs., Ltd. v. Commissioner, 76 T.C. 839, 849 (1981); Curphey v. Commissioner, 73 T.C. 766, 777-778, (1980). Therefore, we must decide whether petitioner's home office in Roanoke was his principal place of business under section 280A(c)(1)(A), even though petitioner did not claim a home office deduction on his tax returns for the tax years in issue.[8]

When a taxpayer conducts business from both a home office and another workplace, and a determination must be made as to which qualifies as the taxpayer's principal place of business, two objective factors are given primary consideration: (1) The

---

[8] Petitioner makes no claims for home office deductions in these cases.

relative importance of the business functions or activities conducted at each place, and (2) the amount of time expended at each place. Commissioner v. Soliman, 506 U.S. 168, 175-177 (1993); Strohmaier v. Commissioner, supra at 111-112.

After careful consideration of the record, we find that petitioner's home office was his principal place of business during the years in issue and, therefore, Roanoke was his tax home. Consequently, we hold that petitioners are entitled to deduct the ordinary and necessary transportation expenses paid or incurred for travel away from Roanoke in pursuit of petitioner's business.

Petitioner testified at trial that he converted a portion of his residence to a home office that he used on a regular basis to conduct analysis, draft reports, and perform other functions for his business. We credit petitioner's testimony at trial and find that he used his modest home office exclusively and on a regular basis for his business during the tax years in issue. See sec. 280A(c)(1).

Moreover, there is ample evidence in the record to support the conclusion that petitioner's home office in Roanoke was his principal place of business during the tax years in issue. See sec. 280A(c).

First, petitioner performed the most important functions of his business from his home office in Roanoke. He provided

rehabilitation cost analyses, loss of earnings analyses, and expert opinion assessments entirely from his home office. No testing was required to provide these services. Even when a case required petitioner to travel to Metairie to conduct a test, the testing process itself was a relatively small component of the overall service provided. The testing data was collected as one step in the process that petitioner used to conduct his analysis, formulate his opinion, and draft his expert reports. The service provided by petitioner is not the collection of raw data through testing; it is his complex analysis of that data, the formulation of an expert opinion, and the presentation of that opinion in the form of a clear and concise written report. Consequently, we find that the most important functions performed by petitioner, even in cases that involved testing, were analysis of data collected, formulation of expert opinions, and composition of expert reports. These functions were entirely performed from petitioner's home office.

We note that petitioner would also travel to Louisiana for the purpose of giving testimony either in court or at a deposition. Giving testimony, however, is ancillary to what we find to be the most important services provided by petitioner. Therefore, given petitioner's credible testimony at trial, we find that the relative importance of the business functions petitioner conducted from his home office in Roanoke

substantially outweigh the activities petitioner performed in Louisiana.

Second, not only did petitioner perform the most important functions of his business from his home office in Roanoke; he spent most of his time working there as well. Petitioner typically arrived in Louisiana on a Monday afternoon, and returned to Roanoke either on a Wednesday or a Thursday morning. If petitioner had no work to complete in Louisiana, he sometimes returned to Roanoke on a Tuesday. While in Roanoke, petitioner worked on Saturdays, and even Sundays after teaching Sunday school and engaging in other personal activities.

If a case required testing in Metairie, the testing process only took 4 hours per client on average. In contrast, the evaluation and reporting process in these cases, performed entirely in Roanoke, took an average of 7 to 8 hours per client. Consequently, even when petitioner had a case that required testing, he spent twice as much time, on average, analyzing data and drafting his reports in Roanoke than he did testing a client in Metairie.

The record does not provide as clear a measure regarding how much time petitioner spent giving testimony in Louisiana at a court appearance or a deposition. When he traveled to Louisiana for the purpose of giving testimony, however, petitioner would often arrive only to discover that the case was settled or the

deposition was canceled. In any event, petitioner's ancillary and irregular appearances in court or at a deposition in Louisiana, even when coupled with the testing process and other minor activities he may have performed there, do not outweigh the time he spent performing business functions at his home office. Therefore, although he traveled to Louisiana frequently, we find that petitioner spent more time performing analysis and drafting reports from his home office in Roanoke than he spent performing business activities in Louisiana.

Finally, we disagree with respondent's contention that petitioner maintained his home office in Roanoke for personal reasons, specifically, because petitioner's wife and children resided there. Instead, the record suggests that petitioner maintained his home office in Roanoke because of the exigencies of his business, not personal reasons. When Work Recovery shut down and he started his own business, petitioner continued the Southeast Region business model. Petitioner began working again with Piedmont Hospital in Atlanta, Georgia, and also working with the director of the State rehabilitation facility in Alabama. Although he would travel to Louisiana for cases that required testing and to provide testimony, his home office in Roanoke remained centrally located within the Southeast Region. Therefore, we find that petitioner maintained his home office in

Roanoke not for personal reasons, but because of his business model.

In conclusion, petitioner's principal place of business, and therefore his tax home, was in Roanoke, Alabama, during the tax years in issue. Consequently, petitioner was "away from home" within the meaning of section 162(a)(2) when he incurred transportation expenses for traveling between his home office and Louisiana in pursuit of his business. Accordingly, petitioner is entitled to deductions for transportation expenses incurred for traveling between his home office and Louisiana in pursuit of his business during the tax years in issue.

## Conclusion

We have considered all of the other arguments made by respondent and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

To reflect the foregoing,

Decisions will be entered under Rule 155.