CHARLES W. AND CATHE R. WALKER, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 20919–91.          Filed December 13, 1993.

Charles W. Walker and Cathe R. Walker, pro sese.
*Michael W. Lloyd,* for respondent.

RUWE, *Judge:* This matter was heard by Special Trial Judge Joan Seitz Pate pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1] An opinion in this case was filed

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect

on July 15, 1993, *Walker v. Commissioner,* T.C. Memo. 1993-311. It was subsequently withdrawn and reassigned to this Division for reconsideration. The Court agrees with and adopts the findings of fact of the Special Trial Judge. The Court also agrees with and adopts the Special Trial Judge's opinion holding that petitioner Charles W. Walker was self-employed during the years in issue and that payments to him, which were reported on petitioners' returns as "equipment rental", actually constituted compensation for services. The portion of the previous opinion dealing with the deductibility of petitioner's truck expenses has been revised, but the result is unchanged.

## FINDINGS OF FACT

Respondent determined deficiencies in petitioners' 1986, 1987, and 1988 Federal income taxes of $1,185, $1,236, and $706, respectively. After concessions by petitioners, the issues for our decision are: (1) Whether Charles W. Walker (hereinafter petitioner) was self-employed and, therefore, may report his gross income on Schedule C; (2) whether a portion of petitioner's gross income constitutes equipment rental; and (3) whether petitioner may deduct truck expenses which he paid for traveling to various locations in the Black Hills National Forest. Petitioners' earned income credit will be automatically adjusted based upon our resolution of the above issues.

Some of the facts have been stipulated and are so found. Charles W. Walker timely filed joint income tax returns with his wife, Cathe R. Walker, for 1986, 1987, and 1988. They resided in Hill City, South Dakota, at the time they filed their petition. Petitioner is a professional "faller" or "cutter", cutting trees in the Black Hills National Forest (hereinafter Black Hills).

During the years in issue, petitioner worked exclusively for Woodward Logging, a company located in Custer, South Dakota. Woodward Logging was owned and operated by Jesse Woodward (hereinafter Woodward), who contracted with various lumber mills to cut and deliver logs from certain timber "sales". A "sale" is a parcel of land, usually com-

---

for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

posed of hundreds of acres, in which the right to remove timber is put up for bid by the U.S. Department of Agriculture Forest Service. When a lumber mill wins a bid, it generally contracts with firms such as Woodward Logging to go onto the sale to cut the trees and deliver them to the mill.

During the years in issue, Woodward Logging contracted with several lumber mills, so it generally was working more than one sale at a time. At times, it simultaneously worked up to six sales. To do this, Woodward Logging maintained two crews, a mechanical logging crew and a conventional logging crew. The mechanical logging crew operated large machines that, if the terrain permitted, could snip the trees and process them mechanically. The conventional logging crew handled the rest of the sale. It was composed of cutters (who cut and trimmed the logs), skidders (who collected and dragged the logs to loading points), and truck drivers (who hauled the logs to the lumber mills). Petitioner was a cutter in Woodward Logging's conventional logging crew.

Petitioner operated as a cutter under the name of C&C Contracting. During the years in issue, he worked exclusively for Woodward Logging on the sale or sales to which he was assigned. Petitioner was not required to work any specific hours or days, but was limited by weather and the time frame in which the sale had to be cut. He was paid on an hourly basis. He was not provided with any sick leave, vacation time, or health insurance, nor was he eligible to participate in any retirement plan sponsored by Woodward Logging. Further, petitioner was liable for any damage he did to the sale, such as to fences or power lines, and was required to pay for the cost of repairing those damages.

To render his services, petitioner furnished his own truck, tools, fuel, and supplies. During the years in issue, petitioner drove a 1983 Chevy Blazer and a 1977 Toyota Landcruiser in which he carried his tools. His tools included, among other things, three chainsaws, an axe, a long-handled shovel, extra chainsaw bars and chains, repair parts, small tools, extra protective clothing, and a fire extinguisher. The extra tools and repair parts were necessary because the sales were so far away from the nearest town that it was not feasible to get the equipment repaired during the course of a working day. He also carried extra gasoline for his truck, and fuel and lubrication for his saws.

Petitioner had contact with Woodward several times a week to ascertain the location to which he was assigned. He worked approximately five sales in 1986, seven sales in 1987, and eight sales in 1988. Within each sale, petitioner worked at two to five general job sites. Once he reached the site assigned, he would take the tools he needed and head up into the hills where he cut trees, trimmed them, and marked them to lengths. In addition, although not required to do so, petitioner reported to Woodward the hours worked by his fellow crew members and picked up and distributed their paychecks on a weekly basis.

Petitioner drove a four-wheel-drive vehicle to get to his initial site and to travel from one site to another. This type of vehicle was necessary because of the rough terrain, the inclement weather, and the relatively poor roads petitioner had to travel to reach the site assigned to him. The distance from Hill City to the various sites he worked during the years in issue varied from 18 to 60 miles each way.

After the workday was over, petitioner checked his equipment to see what needed to be replaced. Petitioner spent approximately 7 hours per week in the workshop adjacent to his residence maintaining and repairing his equipment. When his tools and equipment were not in use, petitioner generally stored them in his vehicle, except on the weekends when he kept them in his workshop.

Petitioner kept a daily record of his working hours and, at the end of the week, submitted them to Woodward. He was paid at the rate of $14 per hour. Woodward Logging reported on Form 1099 that 60 percent of the amount paid to petitioner was equipment rental and the remaining 40 percent was nonemployee compensation.

On his 1986 and 1987 Federal income tax returns, petitioner reported gross income and expenses as follows:

|  | 1986 | 1987 |
|---|---|---|
| Schedule C: | | |
| Gross income | $8,287.29 | [1] $7,618.00 |
| Expenses | 7,899.52 | 7,711.83 |
| Net | 387.77 | (93.83) |
| Schedule E: | | |
| Gross income | 10,819.00 | 15,835.00 |

|                    | 1986      | 1987      |
|--------------------|-----------|-----------|
| Equipment expenses | 6,414.77  | 7,645.88  |
| Net                | 4,404.23  | 8,189.12  |

[1] Although petitioner reported gross income on Schedule C of $7,618, Woodward Logging reported that it paid petitioner only $7,318. The record does not contain any explanation for this difference.

Because of ongoing inquiries from respondent, as well as other governmental agencies,[2] petitioners were unsure of the proper method for reporting their income for 1988. They attached a letter to their income tax return for 1988 explaining their dilemma and reported thereon wages of $14,524.57 and $4,348.89 of reimbursed travel expenses and deducted $3,212.08 in business expenses and $4,348.89 in reimbursed expenses.

OPINION

*Schedule C*

We must first decide whether petitioner correctly reported his income and expenses as a self-employed individual on Schedule C of his individual income tax returns. To be reportable on Schedule C, a taxpayer's income must arise from a trade or business, other than that of being an employee. If a taxpayer's earnings arise from working as an employee, they must be reported as wages.

Whether an individual is an "employee" is determined under applicable common law rules. Secs. 1402(d), 3121(d)(2). Section 31.3401(c)-1(b), Employment Tax Regs., defines the employer/employee relationship as follows:

(b) Generally the relationship of employer and employee exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an

[2] The record indicates that South Dakota considers loggers self-employed for unemployment insurance purposes and employees for workmen's compensation purposes.

employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is not an employee.

Courts have looked to various factors to determine whether an employment relationship exists between the parties. Relevant factors include: (1) The amount of control the principal exercises over the details of the work; (2) which party invests in the work facilities; (3) who has the opportunity for profit or loss; (4) whether the principal has the right to discharge the individual; (5) whether the work is an integral part of the principal's regular business; (6) the permanence of the relationship; and (7) the relationship the parties believe they are creating. *United States v. Silk,* 331 U.S. 704, 716 (1947); *Professional & Executive Leasing, Inc. v. Commissioner,* 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988); *Simpson v. Commissioner,* 64 T.C. 974, 984-985 (1975). There is no one controlling factor. Rather, we must look at all the facts and circumstances of each case. Sec. 31.3401(c)-1(d), Employment Tax Regs.

The present case, like almost all the others, has factors going both ways. After weighing those factors, we find that petitioner was self-employed during the years in issue.

One of the most important factors in our consideration is that, except for designation by Woodward as to the site upon which petitioner would work, petitioner was free to run his job as he saw fit. He was able to set his own hours and days of work, determine the most efficient method to cut and trim the timber, determine the method in which he would accomplish those tasks, and set the sequence in which those tasks were performed.

Petitioner supplied the equipment, tools, fuel, and supplies to accomplish his work. He determined which type of equipment he would work with and, consequently, had to absorb the relative costs associated therewith. As seen from the amounts petitioner deducted on Schedules C and E, his expenses were substantial in amount, especially when compared with his gross income. Moreover, if petitioner damaged any portion of the sale, such as a fence or power line, he was

responsible for its repair, subjecting him to potential loss if he did not perform his job properly.

Further, although petitioner was paid on an hourly basis, Woodward did not provide petitioner any fringe benefits. He received no sick leave, paid vacation time, or health or disability benefits. Moreover, there is no indication that Woodward sponsored or contributed to any retirement plan in which petitioner could participate.

Admittedly, petitioner did provide some services to Woodward not ordinarily within the scope of the duties of a self-employed contractor. For instance, he supervised other members of the crew, made onsite decisions concerning how they would conduct the work, and kept track of the hours worked by them. However, Woodward asked petitioner to perform these services for him, not as a prerequisite to accomplishing his work, but because of petitioner's 40 years of experience as a cutter.

On balance then, we find that petitioner is a skilled craftsman who was engaged to achieve an end result, that is, to cut timber in certain geographic locations and within a certain time frame designated by Woodward Logging, but without specific direction from Woodward Logging as to how to accomplish the work. Based on these facts, we hold that petitioner was self-employed during the years in issue and, accordingly, is required to report his gross income on Schedule C.[3]

*Schedule E*

Woodward Logging reported on Form 1099 that 60 percent of the amount it paid to petitioner was equipment rental. Consequently, petitioner reported that portion of his gross income on Schedule E.

However, there is no evidence in the record that petitioner rented any vehicles or equipment to Woodward Logging. Rather, petitioner supplied and paid for the trucks and all the equipment he needed to perform the services he rendered.

---

[3] Respondent did not determine that petitioner was liable for self-employment taxes in the notice of deficiency, nor did respondent argue at trial (even alternatively) that petitioner was subject to self-employment taxes. Hence, we do not consider petitioner's liability therefor. *Lewis v. Commissioner,* T.C. Memo. 1989-282; *Meredith v. Commissioner,* T.C. Memo. 1984-651; see *Minter v. Commissioner,* T.C. Memo. 1991-448; *Brecht v. Commissioner,* T.C. Memo. 1981-688; *Smith v. Commissioner,* T.C. Memo. 1981-644.

A taxpayer may not determine the nature of his income merely by using a particular form, or by labeling it as he wishes, but must report his income based on the economic realities of the situation. See *Frank Lyon Co. v. United States,* 435 U.S. 561 (1978); *Upham v. Commissioner,* 923 F.2d 1328, 1335 (8th Cir. 1991), affg. T.C. Memo. 1989-253. Because petitioner did not rent any equipment to Woodward Logging, it did not pay petitioner for equipment rental. Therefore, there is no justification for segregating any of the income received from Woodward Logging as "equipment rental" on a separate Schedule E. Consequently, we hold that all the income received by petitioner from his business as a cutter, less all the expenses incurred in performing such services, should have been reported on Schedule C.

*Truck Expenses*

During the years in issue, petitioner used two four-wheel-drive vehicles in his logging business. He also used the vehicles to travel between his residence and his job sites. Petitioners deducted all the expenses—including depreciation—attributable to those vehicles from their gross income. Respondent allowed petitioners to deduct 60 percent of petitioner's total truck expenses. This represented the cost of petitioner's transportation during the day between job sites and to procure supplies, equipment, and repairs. The remaining 40 percent of petitioner's truck expenses represents the daily cost of petitioner's transportation from his personal residence to the first site to be cut and from the last site back to his personal residence. Respondent contends that this latter amount constitutes a nondeductible commuting expense. Petitioners contend that the truck expenses are fully deductible because they constitute ordinary and necessary expenses incurred in petitioner's business of cutting timber.

Section 162(a) provides a deduction for all the ordinary and necessary expenses paid or incurred in carrying on a trade or business. *Sanford v. Commissioner,* 50 T.C. 823, 826 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). An ordinary and necessary expense is one which is appropriate and helpful to the taxpayer's business and which results from an activity which is common and accepted practice. *Deputy v. du*

*Pont,* 308 U.S. 488, 495 (1940); *Boser v. Commissioner,* 77 T.C. 1124, 1132 (1981), affd. without published opinion (9th Cir. 1983); *Ford v. Commissioner,* 56 T.C. 1300, 1305-1307 (1971), affd. per curiam 487 F.2d 1025 (9th Cir. 1973).

It is well settled that the cost of commuting between one's residence and regular place of employment is a nondeductible personal expense. *Commissioner v. Flowers,* 326 U.S. 465, 473-474 (1946); sec. 1.162-2(e), Income Tax Regs.; see sec. 262; sec. 1.262-1(b)(5), Income Tax Regs. Transportation expenses incurred on trips between places of business, however, may be deductible. *Steinhort v. Commissioner,* 335 F.2d 496, 503-504 (5th Cir. 1964), affg. and remanding T.C. Memo. 1962-233; *Heuer v. Commissioner,* 32 T.C. 947, 953 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960). We have held that a taxpayer's cost of transportation between his residence and local job sites may be deductible if his residence serves as his "principal place of business" and the travel is in the nature of normal and deductible business travel. *Wisconsin Psychiatric Servs., Inc. v. Commissioner,* 76 T.C. 839, 849 (1981); *Curphey v. Commissioner,* 73 T.C. 766, 777-778 (1980); *Dudley v. Commissioner,* T.C. Memo. 1987-607, affd. per curiam without published opinion 860 F.2d 1078 (6th Cir. 1988); *Kisicki v. Commissioner,* T.C. Memo. 1987-245, affd. per curiam without published opinion 871 F.2d 1088 (6th Cir. 1989); *Adams v. Commissioner,* T.C. Memo. 1982-223, affd. without published opinion 732 F.2d 159 (7th Cir. 1984).

Respondent argues that petitioner's daily transportation expenses from his residence to the first job site and from the last job site of the day to his residence are not deductible because petitioner has not established that his residence was his "principal place of business". Respondent argues that the standards for determining whether a taxpayer's residence is his "principal place of business" for purposes of local transportation deductions should be the same as the standards for home-office-expense deductions under section 280A.

In *Curphey v. Commissioner,* 73 T.C. 766 (1980), the seminal case on the issue of local transportation expense deductions, the home-office deduction under section 280A and the local transportation deduction were both at issue. For purposes of determining whether the local transportation expenses were deductible, this Court relied on its finding

under section 280A that the home office was the taxpayer's "principal place of business". *Id.* at 777. We thus equated satisfaction of the "principal place of business" requirement under section 280A with satisfaction of the "principal place of business" requirement for expenses associated with local transportation between the home and places of business. See *id.* Indeed, the two issues often present themselves together in a single case; see, e.g., *Curphey v. Commissioner, supra; Adams v. Commissioner, supra,* highlighting the desirability of a consistent interpretation of the "principal place of business" requirement.

In the context of section 280A, whether a taxpayer's residence (or home office) is his "principal place of business" depends primarily upon the relative importance of the activities performed there and the relative amount of time spent there in comparison with the taxpayer's other places of business. *Commissioner v. Soliman,* 506 U.S. ____, ____, 113 S. Ct. 701, 706 (1993). The Supreme Court in *Soliman* interpreted the phrase "principal place of business" in its "ordinary, everyday senses". *Id.* at ____, 113 S. Ct. at 705-706 (quoting *Malat v. Riddell,* 383 U.S. 569, 571 (1966)). Were we to apply the foregoing case law to the facts of this case, we would be inclined to agree with respondent that petitioner has not established that his residence was his principal place of business. It would therefore follow that his daily expenses for transportation from his residence to his first job site and from his last job site of the day to his residence are not deductible. However, our inquiry cannot end here.

In Rev. Rul. 90-23, 1990-1 C.B. 28, 29, the Commissioner ruled that a taxpayer who has one or more "regular places of business" and "who pays or incurs daily transportation expenses for trips between the taxpayer's residence and temporary work locations" *within* a "metropolitan area" may deduct such expenses, "regardless of the distance".[4] On brief,

---

[4] Rev. Rul. 90-23, 1990-1 C.B. 28, relies for comparison on Rev. Rul. 190, 1953-2 C.B. 303. Rev. Rul. 190 involved construction workers who "lived and customarily carried on their trades during the taxable year in such metropolitan area, *and were not regularly employed at any specific location*". 1953-2 C.B. at 305 (emphasis added). Rev. Rul. 190 holds that the construction workers' expenses for daily transportation between that metropolitan area and a temporary work location *outside* that metropolitan area "were necessarily incurred for business reasons, rather than for personal reasons as in the case of a commuter who fixes his residence as a matter of personal convenience and preference at a distance from his regular place of business." *Id.* Rev. Rul. 90-23 explains that

A taxpayer who pays or incurs daily transportation expenses on trips between the taxpayer's

respondent recognizes the possible application of Rev. Rul. 90-23, *supra,* and argues that petitioners fail to satisfy its requirements. Unlike respondent, however, we believe that petitioners do satisfy the requirements of the ruling.

It is clear that Rev. Rul. 90-23, *supra,* allows a deduction for the cost of transportation occurring within a single metropolitan area. While in one sense the Black Hills National Forest (where petitioner's residence and job sites were located) might not be considered a "metropolitan area", respondent argues and we accept that it should be treated as a metropolitan area for purposes of this case.[5]

In order for transportation expenses to be deductible, the ruling requires that the taxpayer have one or more "regular places of business". According to the ruling, "a regular place of business is *any* location at which the taxpayer works or performs services on a regular basis. * * * A taxpayer may be considered as working or performing services at a particular location on a regular basis whether or not the taxpayer works or performs services at that location every week or on a set schedule." Rev. Rul. 90-23, 1990-1 C.B. at 29 (emphasis added). Petitioner worked at his residence for approximately 7 hours each week. There, he contacted or was contacted by Woodward several times each week to determine where his next job site would be. Petitioner repaired, maintained, and stored his tools and equipment at his workshop. Thus, peti-

residence and one or more regular places of business is like the taxpayer described in Rev. Rul. 190 who pays or incurs daily transportation expenses on trips between the taxpayer's residence and temporary work sites *within* the metropolitan area that is considered the taxpayer's regular place of business. Such daily transportation expenses are nondeductible commuting expenses. On the other hand, a taxpayer who has one or more regular places of business and who pays or incurs daily transportation expenses for trips between the taxpayer's residence and temporary work locations is like the taxpayer described in Rev. Rul. 190 who pays or incurs deductible daily transportation expenses for trips between the taxpayer's residence and temporary work sites *outside* the metropolitan area that is considered the taxpayer's regular place of business. Thus, for a taxpayer who has one or more regular places of business, daily transportation expenses paid or incurred in going between the taxpayer's residence and temporary work locations are deductible business expenses under section 162(a) of the Code regardless of the distance. [Rev. Rul. 90-23, 1990-1 C.B. at 29.]

[5] Respondent asserts on brief that

Rev. Rul. 190's metropolitan area is not restricted to the confines of an urban area, but refers to a geographical area within which the taxpayer normally travels to temporary work sites. The Black Hills National Forest is the geographical area where Charles Walker normally worked, with the cutting sites ranging approximately 18 to 60 miles one way from his residence. Chicago's metropolitan area is larger than the entire Black Hills National Forest area, and the South Dakota net area of the Black Hills National Forest, the geographic area Charles Walker worked, covers less than 54 percent of the Chicago metropolitan area. Jt. Ex. 10-J at p. 3, Jt. Ex. 13-M; Stip., p. 9. * * *

tioner worked at his residence on a regular basis within the meaning of the ruling.

There is no reason why petitioner's residence cannot serve as his "regular place of business". In the case of a home-office deduction, Congress and the Supreme Court have acknowledged that a taxpayer's residence may constitute a "principal place of business". See sec. 280A; *Commissioner v. Soliman, supra.* As noted above, the principal place of business concept has heretofore figured prominently in cases involving transportation expenses between a taxpayer's residence and other places of business. See *Curphey v. Commissioner,* 73 T.C. 766 (1980). Despite this Court's conspicuous use of the "principal place of business" standard in this area, the Commissioner has chosen not to utilize it in Rev. Rul. 90-23, *supra.* Instead, the ruling adopts the less stringent "regular place of business" standard.[6]

Respondent contends that "For purposes of Rev. Rul. 90-23, Respondent considers a 'regular place of business', to be a *specific location.*" (Emphasis added.) We agree. However, respondent then goes on to argue that

*Charles Walker's regular place of business,* where cutting services are performed and new work is secured, *is the Black Hills National Forest* wherein lie all the cutting sites. Because Charles Walker commutes to different localities within the Black Hills National Forest, he fails to come within the ambit of Rev. Rul. 90-23. * * * [Emphasis added.]

Respondent's argument is illogical. The factual situation addressed in Rev. Rul. 90-23, *supra,* is one in which the taxpayer has a "regular place of business" at a specific location within a single metropolitan area and is allowed to deduct the costs of transportation between his residence and "temporary places of business" that are also in the single metropolitan area. If, for purposes of Rev. Rul. 90-23, an entire metropolitan area is to be considered a taxpayer's "regular place of business", the whole purpose of Rev. Rul. 90-23 would be nullified. Using respondent's reasoning, see *supra*

---

[6] Rev. Rul. 90-23, *supra,* states that "a regular place of business is *any* location at which the taxpayer works or performs services on a regular basis" (emphasis added). The portion of respondent's brief that addresses Rev. Rul. 90-23 contains no argument that a taxpayer's residence cannot qualify as the taxpayer's "regular place of business" for purposes of Rev. Rul 90-23. Indeed, the ruling only requires that a taxpayer have "one or more regular places of business" and that the expenses be incurred in traveling to temporary work locations. It defines these phrases and terms broadly and places no restrictions on a residence serving as a regular place of business.

note 5, a taxpayer who had a regular place of business in Chicago and traveled from his residence in Chicago to temporary places of business (that were also in Chicago) would not be entitled to deduct the costs of transportation between his residence and the temporary places of business. Such a result is diametrically opposed to the main thrust of Rev. Rul. 90-23.[7]

On the facts in this record, we find that petitioner's residence was a "regular place of business". It was a "specific" location where petitioner worked on a regular basis. Rev. Rul. 90-23, *supra,* requires nothing more.[8]

Rev. Rul. 90-23 allows deductions for expenses incurred for transportation between a taxpayer's residence and *temporary* places of business. According to the ruling, "a temporary place of business is any location at which the taxpayer performs services on an irregular or short-term (*i.e.,* generally a matter of days or weeks) basis." 1990-1 C.B. at 29. The numerous job sites at which petitioner worked were widely dispersed throughout the large Black Hills National Forest. Petitioner's work at any specific job site was short-lived. Petitioner had no reasonable expectation that he would work at any particular location for more than a matter of weeks. On brief, respondent acknowledges that petitioner's "cutting sites varied, [sic] working approximately two to three weeks at the same site." It is clear that the job sites to which petitioner drove each day were "temporary work locations" that constituted "temporary places of business" within the meaning of Rev. Rul. 90-23.[9]

---

[7] We suspect that respondent's confusion stems from a failure to distinguish between the factual situations in Rev. Rul. 190, 1953-2 C.B. 303, and Rev. Rul. 90-23, 1990-1 C.B. 28. Rev. Rul. 90-23 addresses the situation of "a taxpayer with one or more regular places of business". As stated in Rev. Rul. 90-23: "Rev. Rul. 190 is distinguished because the employees in that revenue ruling were not regularly employed at any specific work locations". 1990-1 C.B. at 30.

[8] Rev. Rul. 90-23, 1990-1 C.B. at 29, states:

For purposes of determining whether daily transportation expenses within the metropolitan area are deductible business expenses or nondeductible commuting expenses, a regular place of business is any location at which the taxpayer works or performs services on a regular basis, and a temporary place of business is any location at which the taxpayer performs services on an irregular or short-term (*i.e.,* generally a matter of days or weeks) basis. * * *

[9] By comparison, we note that the current version of sec. 162(a) states: "For purposes of * * * [sec. 162(a)(2)], the taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds 1 year." The Commissioner's most recent technical position on the issue states: "if employment away from home in a single location is realistically expected to last (and does in fact last) for 1 year or less, the employment is temporary in the absence of facts and circumstances indicating otherwise." Rev. Rul. 93-86, 1993-40 I.R.B.

Rev. Rul. 90-23 is designed to provide a deduction for the cost of transportation between a taxpayer's residence and temporary places of business if the taxpayer has one or more regular places of business. Petitioner's residence served as a "regular place of business". Petitioner's job sites were temporary places of business to which he traveled daily from his residence. Petitioner, therefore, meets the deductibility requirements of Rev. Rul. 90-23.

We have analyzed the transportation-commuting expense issue in light of both the existing case law and respondent's recent revenue ruling. We conclude that they produce inconsistent results. We must now choose between the two. For this, we are not without guidance. A very similar situation was present in *Norwood v. Commissioner,* 66 T.C. 467 (1976), where respondent had adopted a position that was favorable to the taxpayer and inconsistent with the precedent in this Court. *Norwood* also involved the deductibility of commuting type expenses, albeit in a somewhat different context. In *Norwood,* we treated respondent's position as a concession.[10] We likewise treat respondent's position in Rev. Rul. 90-23, *supra,* as a concession that petitioners are entitled to deduct the full amount of their truck expenses if they can establish that they meet the factual requirements of the ruling. Since we have found that they meet those require-

---

1 (1993).

[10] In *Norwood v. Commissioner,* 66 T.C. 467, 469 (1976), we stated:

We are again faced with the troublesome question of how to deal with travel expenses (not involving an overnight stay) which partake of the character of commuting expenses. See *William B. Turner,* 56 T.C. 27 (1971), vacated and remanded *on respondent's motion* by an unpublished order (2d Cir., Mar. 21, 1972). Respondent has chosen, however, to frame the issue before us in classical terms, namely, whether petitioner's employment in Lusby was "temporary" or "indefinite." *Peurifoy v. Commissioner,* 358 U.S. 59 (1958), affg. per curiam 254 F.2d 483 (4th Cir. 1957); see Rev. Rul. 55-109, 1955-1 C.B. 261; Rev. Rul. 54-497, 1954-2 C.B. 75; Rev. Rul. 190, 1953-2 C.B. 303; Pub. 17, "Your Federal Income Tax," p.73 (1976 ed.); Pub. 463, "Travel, Entertainment, and Gift Expenses," p.6 (1976 ed.); 3 C.C.H. Internal Revenue Manual 8409-3 (1975). As we view respondent's position in this case, he concedes that to the extent that we determine petitioner's employment at Lusby was temporary, Washington, D.C., was petitioner's principal place of employment and the expenses in question are deductible as ordinary and necessary business expenses under section 162(a). See *Arthur Sansone,* 41 T.C. 277 (1963). Compare *Hess v. United States,* 329 F. Supp. 1353 (D. Kan. 1971). Under the foregoing circumstances, our decision in *Turner* simply has no bearing herein. Compare also *Berhow v. United States,* 279 F. Supp. 737 (D. Neb. 1968); Rev. Rul. 190, 1953-2 C.B. 303. [Fn. ref. omitted.]

ments, petitioners are entitled to deduct all the truck expenses in issue.

*Decision will be entered under Rule 155.*