T.C. Memo. 1996-7


UNITED STATES TAX COURT


KEITH F. MARASON, Petitioner <u>v</u>. COMMISSIONER
OF INTERNAL REVENUE, Respondent


Docket No. 23471-93.                    Filed January 16, 1996.


        On the facts, <u>Held</u>: respondent's application of
bank deposits method to determine petitioner's gross
income in the absence of books and records approved,
with one modification; <u>held, further</u>, miscellaneous
deductions redetermined; <u>held, further</u>, petitioner
liable for additions to tax under sec. 6651(a)(1),
I.R.C., for 1988, 1989, and 1990; the addition to tax
under sec. 6653(a)(1), I.R.C., for 1988; and the
accuracy-related penalty under sec. 6662(a), I.R.C.,
for 1989 and 1990.


<u>David L. Gibson</u>, for petitioner.

<u>Margaret S. Rigg</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, <u>Judge</u>:  Respondent determined income tax deficiencies, additions to tax, and penalties with respect to petitioner's taxable years 1988, 1989, and 1990, as follows:

| Taxable Year | Income Tax Deficiency | Additions to Tax | | | Penalties |
| | | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6661 | Sec. 6662(a) |
|---|---|---|---|---|---|
| 1988 | $5,324 | $1,331 | $379 | $1,331 | -0- |
| 1989 | 17,696 | 4,424 | -0- | -0- | $3,539 |
| 1990 | 23,701 | 5,925 | -0- | -0- | 4,740 |

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues for decision are:

1.  Did petitioner have unreported income of $1,524[1] in 1988 and $32,086 in 1990?

2. How much is petitioner entitled to deduct as Schedule C expenses?  After substantial concessions by both parties, the following amounts remain in contention:

| Category | 1988 | 1989 | 1990 |
|---|---|---|---|
| Depreciation | -0- | $(627) | $(1,003) |
| Office expense | $697 | 1,355 | 1,934 |
| Supplies | 524 | 4,637 | -0- |

---

[1]  This number is derived using the unreported income figures in the Notice of Deficiency.  The numbers from the Stipulation of Facts differ by $3.

| | | | |
|---|---|---|---|
| Travel[2] | 3,553 | 11,493 | 7,906 |
| Contract labor[3] | -0- | 5,846 | 3,518 |
| Insurance expense | 207[4] | 589 | 755 |
| Miscellaneous Exp. | -0- | -0- | 484 |
| Self-employment tax deduction | -0- | -0- | 2,532 |
| Total | 4,981 | 23,293 | 16,126 |

3. Is petitioner liable for the addition to tax for late filing under section 6651(a)(1) for each of the years in issue?

4. Is petitioner liable for the addition to tax for negligence under section 6653(a)(1) for 1988?

5. Is petitioner liable for the negligence penalty under section 6662 for 1989 and 1990?

6. Is petitioner liable for the 10-percent addition to tax under section 72(t) for early distribution from a qualified retirement plan in 1988.

Petitioner resided in San Francisco, California, when he filed his petition. Some of the facts have been stipulated and are incorporated herein by this reference. For convenience we have divided our findings of fact and opinion into separate parts, and in most parts, because of the confused record, have combined our findings of fact and opinion.

---

[2] These figures include travel expenses that petitioner deducted under contract labor expenses.

[3] These figures exclude travel expenses that petitioner deducted under contract labor expenses.

[4] The amount respondent disallowed is $1,120. The parties stipulated a disallowance of $1,220. Accordingly, since respondent disallowed $1,120 and petitioner concedes $913, the difference is $207.

Issue 1. Unreported Income

FINDINGS OF FACT

Petitioner has been a certified public accountant since 1973.  In 1987 he left his employment at Coopers and Lybrand and started his own business, which he maintained during the years at issue.  At the time of trial, petitioner was employed by B.D.O. Seidman in San Francisco as a senior manager in the audit department.  During the years in issue, petitioner billed clients on an hourly basis, and periodically he sent invoices to his clients.  He deposited payments into his bank accounts.

Petitioner kept no formal set of books for 1988 or 1990.  As a consequence, respondent determined petitioner's income for those years using the bank deposits analysis method.

The following is a summary of respondent's bank deposit analysis for 1988:

## 1988

Deposits to:

| | | |
|---|---|---|
| 1. | Bank of Guam #107202861 | $20,378 |
| 2. | Pacific Bank #1250-401445 | 7,500 |
| 3. | Wells Fargo Bank #0295-235527 | 36,982 |

Add:
Cash withdrawn
at time of deposits          1,630

Gross Deposits:          66,490

Less:
Transfers          (16,610)
Nontaxable items          (5,786)

Taxable deposits:          44,094

Less:
Schedule C
gross income          (33,673)

Additional income:          10,424[5]

The "cash withdrawn at time of deposits" line reflects notations on deposit slips showing amounts of cash returned to petitioner by the bank tellers after petitioner had made the deposits. Respondent has conceded $8,900 of the $10,424 additional income reflected in the 1988 bank deposit analysis. Accordingly, the amount remaining in dispute for 1988 is $1,524.

---

[5] Respondent's Notice of Deficiency uses this number, although there is a $3 subtraction error.

The following is a summary of respondent's bank deposit analysis for 1990:

<u>1990</u>

Deposits to:
1. Bank of Guam      $68,534
   #107202861

2. Wells Fargo Bank    43,260
   #0025-085119

3. Wells Fargo Bank    82,135
   #0295-235527
   On October 1, 1990
   transferred to
   #0025-722398

Add:
    Cash withdrawn
    at time of deposits     <u>1,250</u>

Gross deposits:         195,179

Less:
    Transfers            (62,650)
    Rounding             (13)
    Nontaxable items     <u>(5,008)</u>

    Taxable deposits:    127,508

Less:
    Schedule C
    gross income       <u>(81,687)</u>

Additional income:     45,823[6]

At trial, respondent conceded $13,737 of the $45,823 additional income reflected in the 1990 bank deposit analysis. Accordingly, the amount remaining in dispute for 1990 is $32,086.

---

[6] This number comes from respondent's Notice of Deficiency. There is a $2 subtraction error.

Petitioner reported as income only the amounts reported on Forms 1099 that he received from payors. The gross receipts that respondent determined for the years at issue compared to the gross receipts petitioner showed on his returns are as follows:

|  | 1988 | 1990 |
|---|---|---|
| Wells Fargo #25-8511 |  | $43,261 |
| Wells Fargo #295-23527 | $16,216 | 20,113 |
| Pacific Bank 1250-401445 | 7,500 | -0- |
| Bank of Guam 107202861 | 20,378 | 68,534 |
| Less: |  |  |
|   Transfers: |  |  |
|     Merrill Lynch |  | 4,400 |
| Gross receipts per exam | 44,094 | 127,508 |
| Gross receipts per return | 33,673 | 81,687 |
| Adjustment | 10,421 | 45,821 |

In 1988 petitioner had accounts in three banks: Wells Fargo Bank, Pacific Bank, and Bank of Guam. Respondent's agent included all of them in his bank deposits analysis.

In 1990 petitioner had three principal bank accounts, two in Wells Fargo Bank and one in Bank of Guam. Respondent disregarded four other accounts maintained by petitioner as being inconsequential. Respondent's agent totaled petitioner's deposits, added in the cash that petitioner received when making deposits, and subtracted interaccount transfers and nontaxable items to determine petitioner's total deposits for 1988 and 1990.

OPINION

The use of the bank deposits method for computing income has long been sanctioned by the Courts. When a taxpayer keeps no books or records and has large bank deposits, the Commissioner is

not arbitrary or capricious in resorting to the bank deposits method. DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992). The fact that the Commissioner was not completely correct does not invalidate the method employed. Id. at 868.

In the absence of books and records in this case, respondent analyzed petitioner's bank records and prepared schedules that summarized all of the transactions occurring in the accounts during 1988 and 1990. Respondent identified any deposits which represented nontaxable income or interaccount transfers, or which were receipts of income reported on petitioner's tax return. Consequently, with the exception hereinafter noted, respondent has properly reconstructed petitioner's gross income under the bank deposits method. Respondent made substantial concessions in connection with her bank deposit analysis, both before and during the trial. We have examined petitioner's remaining objections and find that all but one have either been taken into account in respondent's analysis or are unsupported by the record.

Petitioner claims that respondent failed to reduce the additional income computation for 1990 by $1,500, the amount of an interbank transfer from petitioner's account at the Bank of Guam to his account at Wells Fargo Bank. The record shows two $1,500 checks drawn on the Bank of Guam, and two deposits, each in the amount of $1,500, into petitioner's Wells Fargo Bank account, all within the April 1, 1990, to April 6, 1990, time

frame. We conclude that both of the $1,500 checks reflect transfers, but respondent has treated only one as a transfer. We therefore agree with petitioner that 1990 gross income as determined by respondent, and as reduced by respondent's concessions noted in our Findings of Fact, should be further reduced by an additional $1,500.

Issue 2. Miscellaneous Deductions

FINDINGS OF FACT AND OPINION

In 1988 petitioner opened an office located at 100 Pine Street in downtown San Francisco and continued to rent this office space during the three years in issue. Respondent allowed the amount of the rent as a deduction in each year. Petitioner resided in a studio apartment at 770 California Street, San Francisco, during these years. His apartment was six blocks from his office.

a. Office Expense

Although petitioner did not seek to deduct any part of his apartment rent as a business deduction, he claimed the use of his apartment as an office and sought to deduct as office expense the cost of many furnishings for his apartment. The amount claimed on each return as office expenses, the amounts allowed by respondent, and the adjustments to petitioner's claimed Schedule C office expenses are as follows:

|            | 1988   | 1989   | 1990   |
|------------|--------|--------|--------|
| Per return | $1,881 | $9,078 | $4,828 |

|              |       |       |       |
|--------------|------:|------:|------:|
| Per exam     | 1,184 | 2,246 | 1,953 |
| Adjustment   |   697 | 6,832 | 2,875 |

A $697 claimed deduction for 1988, which respondent disallowed, was for halogen lighting in petitioner's apartment. The $697 was an unallowable personal expense under section 262.

In 1989, petitioner purchased shelving, file cabinets, and a drop-leaf desk from Performance Audio for use in his apartment. These purchases represent personal items that are nondeductible under section 262.

In the same year, petitioner bought from House of Music and sought to deduct merchandise costing $5,477.30. Petitioner concedes this item on brief.

In 1990, petitioner purchased for use in his home two items from the World of Sound, described on the invoice as "THE AUDIO/VIDEO SPECIALISTS", costing $565.78 and $2,309, respectively. In his brief petitioner concedes $941 previously claimed as office expense for 1990. He has failed to establish that the items purchased were for business use, and not for personal use. Respondent's disallowance of these items is sustained.

## b. Supplies

Respondent made the following adjustments to petitioner's claimed Schedule C "supplies" expenses:

|            | 1988    | 1989      | 1990      |
|------------|---------|-----------|-----------|
| Per return | $4,558  | $14,729   | $7,028    |
| Per exam   | 4,034   | 3,346     | 3,331[7]  |
| Adjustment | 524     | 11,381[8] | 3,697     |

Petitioner offered no testimony or other evidence to identify, describe, or justify the $524 amount disallowed for 1988. Consequently, respondent's disallowance is sustained.

Unlike 1988 and 1990, petitioner produced some books and records for 1989. The 1989 supplies adjustment is complicated. Petitioner had two 1989 accounts, called "office expenses" and "books and reference materials", respectively. According to his records, his "office expenses" amounted to $20,838 and his "books and reference materials" cost $3,889, a total of $24,729. Petitioner deducted $10,000 of the $24,729 under depreciation as a section 179 expense and deducted the rest, $14,729, on the "supplies" line of Schedule C of the 1989 return.

Respondent evaluated petitioner's "office expenses" and "books and reference materials" separately, and disallowed $7,703 of petitioner's office expenses for 1989, $6,744 of which petitioner conceded on brief. The conceded amount includes a computer that cost $6,056 and which was returned on the day it was purchased, but which petitioner nevertheless claimed as a

---

[7] $3,331 is the amount respondent determined. The parties, however, mistakenly stipulated $3,697, which we simply disregard.

[8] There is a $2 subtraction error in petitioner's favor, which we accept.

deduction on his 1989 return. The remaining difference between the $7,703 disallowed by respondent and the $6,744 conceded by petitioner consists of miscellaneous items purchased at The Sharper Image, which petitioner has failed to prove were deductible business expenses.

After the $7,703 disallowance of the claimed $20,838 claimed office expenses, respondent allowed $10,000 as first-year expense under section 179, and required depreciation of the remaining $3,134 in subsequent years. Petitioner claims that respondent made a $3,134 math error. He simply does not understand that respondent capitalized this amount rather than disallowing it entirely. Respondent's treatment of this amount is sustained.

As to the $3,889 "books and reference materials", which petitioner sought to deduct as "supplies", respondent disallowed $543. Of the $543, $429 was for course materials on real estate, and $113.89 was unexplained. Petitioner testified that the two real estate courses were used to educate himself because many of his clients were involved in real estate. We accept petitioner's testimony on this point and believe there is a sufficient nexus between petitioner's accounting practice related to real estate clients and these courses to justify the deduction of their $429 cost. Respondent's disallowance of the remaining $113.89 is proper due to the lack of any evidence supporting the deduction.

Respondent disallowed petitioner's 1990 claimed deduction of $3,697 for supplies, which petitioner concedes.

c.  Travel Expense

Findings of Fact and Opinion

In addition to deducting some transportation cost under travel expenses, petitioner also deducted other transportation costs under contract labor.  To avoid confusion we have combined with the travel expenses the expenses claimed for contract labor to the extent that they represent work done to petitioner's Porsche or other costs of transportation.  Respondent disallowed travel expenses of $3,553[9] in 1988 as well as $11,929[10] in 1989 and $8,656[11] in 1990.  Petitioner concedes $436 of claimed travel expense for 1989, for a $373 Amtrak ticket used by petitioner's mother when she visited him and for $63 in parking tickets.  Petitioner also concedes $300 for 1990.

Petitioner claimed to own two cars during the years at issue, a 1982 Porsche and a 1957 Volkswagen (VW).  Since his Porsche was in the shop from late 1988 to sometime in 1990, petitioner briefly rented a car from Avis, and also rented a BMW from Joseph Clare.  Petitioner claims that he used the Porsche and the rented cars solely for business but admitted at trial that he did not keep a mileage log, and testified only summarily that he used the cars to visit clients.  Nevertheless, respondent

[9]  Petitioner deducted this entire amount under contract labor.

[10]  Both the Stipulation of Facts and the Notice of Deficiency derive this number by attempting to subtract $6,095 from $18,027.  Thus, there is a $3 error in petitioner's favor that we accept.

[11]  Petitioner deducted $3,520 of this amount as contract labor.

concedes that petitioner used these cars (except the alleged VW) 50 percent for business.

Petitioner insists that for personal trips he used only his 1957 VW, but admitted that the VW had high mileage and was not "reliable". Neither the revenue agent nor the Court was shown any reliable evidence the VW even existed. Therefore, in the absence of any objective evidence regarding petitioner's use of the Porsche and the rented cars for business, it is reasonable to infer a substantial degree of personal use of these cars. We accept respondent's determination of 50-percent business use of these cars.

Petitioner acquired the Porsche in 1982 for $10,000. In late 1988 he took the Porsche to Perl's Body Shop for major repair work, which Perl's failed to perform after completely dismantling the car. Petitioner retrieved the car, including all the disassembled parts, in 1990.

Respondent disallowed the following amounts as business expenses in 1988 for work on the Porsche:

| Item | Amount |
|------|--------|
| Perl's Body Shop | $3,400 |
| Red McClintock | 146 |
| Stoddard Imported Cars | 7 |
| Total | 3,553 |

As stated, Respondent disallowed the entire amount as a business expense, but determined that 50 percent could be depreciated.

Respondent disallowed the following amounts in 1989:

| Item | Amount |
|---|---|
| Parking at 770 California Street (petitioner's residence) | $1,950 |
| 50 percent of car rental payments to J. Clare | 1,500 |
| 50 percent of Avis Rental Car payments | 617 |
| Parking tickets | 63 |
| 50 percent DMV renewals and miscellaneous | 115 |
| Amtrak | 373 |
| Porsche auto invoices | 7,311 |
| Total | 11,929 |

Respondent disallowed the following amounts in 1990:

| Item | Amount |
|---|---|
| Rod McClintock | $2,600 |
| Ray Johnson | 200 |
| Perl's Body Shop | 647 |
| S&D Towing | 73 |
| 50 percent of car rental payments to J. Clare | 450 |
| Non-itemized amounts | 4,236 |
| Total | 8,206 |

As to the 1989 and 1990 expenditures related to travel, respondent either disallowed the entire amount in some cases, disallowed 50 percent of them in other cases, and required capitalization of the full amount of the rest. With regard to those required to be capitalized, respondent allowed depreciation on 50 percent of the capitalized amounts.

We generally agree with respondent's determination. Petitioner testified that he received an estimate that convinced him that merely to paint the car, and return it to the condition

it was in when first delivered to Perl's, would cost $6,500. Respondent determined that the 1989 Porsche auto invoices in the amount of $7,311, and, for 1990, $3,937 of the $5,107 claimed expenses, should be capitalized.

In our judgment, the expenditures represent amounts expended in restoring property which are required to be capitalized under section 263(a)(2). The regulations explain that amounts that are paid or incurred to add to the value of property or to substantially prolong its useful life may not be deducted, but must be treated as a capital expenditure. They are to be distinguished from amounts paid or incurred for incidental repairs and maintenance of property. Sec. 1.263(a)-1(a) and (b), Income Tax Regs.; cf. sec. 1.162-4, Income Tax Regs. In Clark v. Commissioner, T.C. Memo. 1969-241, we held that the cost of reconditioning a nine-year-old pickup truck added to the value of the pickup and appreciably prolonged its life; the cost was therefore required to be capitalized. The same rationale applies here.

For 1989, respondent disallowed the entire $1,950 expenditure for parking. We agree with the disallowance, since petitioner failed to show that any part of the cost of parking was not a nondeductible commuting expense. See Walker v. Commissioner, 101 T.C. 537, 545 (1993); secs. 1.262-1(b)(5), 1.162-2(e), Income Tax Regs.

For the above reasons, we agree with respondent's determination regarding the remaining 1989 and 1990 travel expense items.

### d. Contract Labor

Findings of Fact and Opinion

Petitioner claimed deductions for "contract labor", that is, for secretarial help and other assistance, for each of the three years at issue. The amounts petitioner claimed, the amounts respondent allowed, and the amounts respondent adjusted are as follows:

|                        | 1988  | 1989     | 1990     |
| ---------------------- | ----- | -------- | -------- |
| Per return[12]         | $-0-  | $17,921  | $20,992  |
| Per exam               | -0-   | 10,720   | 17,474   |
| Adjustment             | -0-   | 7,201    | 3,518    |

Respondent states on brief that petitioner was allowed a deduction for those people for whom petitioner filed Forms 1099.

The $7,201 adjustment for 1989 consists of the following:

| Payee            | Amount  |
| ---------------- | ------- |
| Joseph Clare     | $1,355  |
| Gina Cagampan    | 3,110   |
| Shelly Jue       | 1,059   |
| Patrick Marason  | 800     |
| Miscellaneous    | 877     |
| Total            | 7,201   |

The 1990 adjustment consists of the following:

| Payee            | Amount  |
| ---------------- | ------- |
| Marilyn Yee      | $420    |
| Patrick Marason  | 508     |

---

[12] We have reduced these numbers by the amount of the contract labor expenses dealt with under travel expenses.

| Huda Mustapha | 396 |
|---|---|
| Shelly Jue | 2,100 |
| Unidentified | 94 |
| Total | 3,518 |

For 1989 respondent concedes the $1,355 payment to Joseph Clare, and we deem petitioner to have conceded the $877 miscellaneous amount, which he failed to discuss in either of his briefs.  After concessions only the payments to Shelly Jue, Gina Cagampan, and Patrick Marason remain in dispute for 1989.

Shelly Jue was petitioner's apartment mate.  Petitioner does not discuss what business services she is alleged to have rendered.  Patrick Marason was petitioner's brother.  Petitioner testified that Patrick has an accounting degree and that he assisted petitioner with his client files and office work, including maintenance of a mailing list.  Neither Cagampan, Jue, nor Patrick Marason was called to testify, nor did petitioner furnish them with Forms 1099.  Without objective evidence we are unable to accept petitioner's uncorroborated testimony that they performed services for his business in either 1989 or 1990.

Gina Cagampan, however, had worked with petitioner at the same firm before he left it to join Coopers & Lybrand.  She had worked as a secretary then, and it is reasonable to infer that their relationship remained work related.  Respondent does not dispute that petitioner paid Cagampan $3,110 in 1989.  A deduction for that amount will therefore be allowed.

Petitioner failed to produce any evidence regarding the 1990 payments of $420 to Marilyn Yee and $396 to Huda Mustapha, nor does he explain the unidentified $94. These amounts are therefore disallowed.

### e. Insurance

Findings of Fact and Opinion

Respondent adjusted petitioner's deductions for insurance for the three years in issue, allowing deductions for health insurance but disallowing life and disability insurance deductions and 50 percent of car insurance deductions. Petitioner states on brief that $755 representing car insurance remains in dispute, but does not explain how he arrives at that amount. Petitioner testified that he had additional expenses for payments to California State Automobile Association (CSAA), but did not show that those amounts were in addition to the amounts respondent allowed for insurance. We therefore accept respondent's determination as to the disallowed insurance expense.

### f. Miscellaneous

Petitioner claimed a "Miscellaneous" deduction of $713 on his 1990 return, but does not explain the deduction. It is therefore disallowed.

g.  <u>Self-employment Tax Deduction</u>

The amount of the allowable deduction for one-half of the self-employment tax imposed by section 1401 will be recomputed under Rule 155.

<u>Issue 3. Additions to Tax and Penalties</u>

Respondent determined additions to tax for late filing for all years in issue.  Petitioner claimed that he was delayed in filing his returns because he moved his papers to different locations several times.  The record does not support this assertion.  Petitioner is therefore liable for the additions to tax for late filing as determined by respondent.

Respondent determined an addition to tax for negligence under section 6653(a)(1) for 1988 and an accuracy-related penalty for negligence under section 6662(a) for 1989 and 1990.

The addition to tax for negligence under section 6653(a)(1) is applicable if all or part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations.  The accuracy-related penalty under section 6662(a) is applicable if all or part of an underpayment of tax is attributable, among other things, to negligence or disregard of rules or regulations.

We need not extend this opinion by rehashing the many instances in each of the years in issue in which petitioner

understated his gross income or blatantly claimed deductions that he knew or should have known were for personal expenses and therefore unallowable.  Petitioner has the burden of proof on the additions to tax and penalty issues, which he has failed to carry.  <u>Bixby v. Commissioner</u>, 58 T.C. 757 (1972); see <u>Grzegorzewski v. Commissioner</u>, T.C. Memo. 1995-49.  Respondent's determinations are therefore sustained.

Respondent has conceded the substantial understatement penalty under section 6661 for 1988.

Respondent determined a 10-percent penalty under section 72(t) in the amount of $60 for a premature distribution made in 1988 from petitioner's Keogh account, a qualified retirement plan.  Petitioner does not address this issue in either of his briefs, and it is therefore deemed conceded.

To reflect the above,

<u>Decision will be entered</u>

<u>under Rule 155</u>.