T.C. Memo. 2000-197

UNITED STATES TAX COURT

JOHN R. AND LOIS J. MCCARTHY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3179-99.                          Filed June 29, 2000.

John R. McCarthy, pro se.

<u>Jonathan Sloat</u>, for respondent.

MEMORANDUM OPINION

NAMEROFF, <u>Special Trial Judge</u>:  Respondent determined
deficiencies in petitioners' 1993, 1994, and 1995 Federal income
taxes in the amounts of $2,512, $2,325, and $7,734, respectively.

The issues for decision are:  (1) Whether petitioners
properly reported certain types of income as Schedule C income;
(2) whether John R. McCarthy (petitioner) conducted his writing
activity with the objective of making a profit within the meaning

of section 183;[1] and if so, (3) whether petitioners have substantiated the ordinary and necessary expenses claimed with respect to the writing activity.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Simi Valley, California.

For all years in issue, petitioners filed with their joint returns Schedules C, Profit or Loss From Business, for petitioner's activities. On the Schedules C, petitioner listed his principal business or profession as writing, investing, job shopping, art, engineering, science, consulting, teaching, photography, and research. All of the expenses listed on the Schedules C were only with regard to petitioner's writing activity, and this is the only activity in which petitioner engaged with any regularity. Therefore, we consider the Schedules C as pertaining only to petitioner's writing activity. For convenience, we combine the findings of fact and opinion for each issue.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts have been rounded to the nearest dollar for convenience.

Character of Income

Petitioners reported income on the 1993 Schedule C of $198. This amount is attributable to royalties petitioner received for consulting work he had performed prior to 1993 for an educational video. Petitioner had provided information on anthropology and agreed to accept as part of his compensation a percentage from the future sales of the video.

For 1994, petitioner reported Schedule C income of $4,697 consisting of video royalties of $313, $9 for performing unspecified research, $2,500 as a refund of legal expenses, and $1,877 of interest. Prior to the years at issue, petitioner had assisted an individual with his invention. A legal dispute arose between the parties. Petitioner retained counsel in 1993 and paid him an amount in excess of $2,500. In 1994, the matter more or less disappeared, and petitioner's counsel refunded $2,500 to petitioner. Petitioner included the $2,500 in Schedule C income because he had claimed a Schedule C deduction for legal expenses in 1993.[2]

---

[2] Petitioners claimed a deduction of $4,398 for legal and professional services on the 1993 Schedule C. It is not apparent whether this entire amount was paid to petitioner's counsel concerning the invention matter. Respondent concedes that the $2,500 is not includable in income in 1994 and the $2,500 is not a deductible expense for 1993, irrespective of whether we determine that petitioner's activity was not entered into for profit.

The interest item represents petitioner's 50 percent of the interest earned on a savings account funded by the estate of petitioner's mother. The account is in the name of petitioner's sister, who wires amounts to petitioner on a monthly basis. Petitioner considers this as business income since he uses these funds for expenses for his writing activity.

In 1995, petitioner reported income of $8,350 on his Schedule C. This amount consists of $267 of video royalties, interest of $8,022 from his sister, and $60 for services he performed as a guest lecturer for an anthropology class.

None of this income was related to the writing activity. Respondent determined that the above described income is not properly reportable on a Schedule C pertaining to the writing activity.

"A taxpayer may not determine the nature of his income merely by using a particular form or by labeling it as he wishes, but must report his income based on the economic realities of the situation." Upham v. Commissioner, 923 F.2d 1328, 1335 (8th Cir. 1991), affg. T.C. Memo. 1989-253; Walker v. Commissioner, 101 T.C. 537, 544 (1993) (citing Frank Lyon Co. v. United States, 435 U.S. 561 (1978)).

Petitioner agrees that none of this income was derived from his writing activity. Petitioner testified that he knew he had to report all income received and the Schedule C seemed like the

proper place. Furthermore, petitioner is of the opinion that since he spent some of the income on his writing activity it should be reported on Schedule C.

The various income items are not properly reportable on Schedule C pertaining to the writing activity. Indeed, these income items were derived from separate activities or transactions apart from petitioner's writing activity. Therefore, income from other activities cannot be offset by expenses from petitioner's writing activity. The compensation received from the video production and the lecturing fee are properly reportable as "Other income" on line 21 of Form 1040.[3] The interest income is properly reportable on Schedule B, Interest and Dividend Income.[4]

---

[3] For an activity to be considered a trade or business, the taxpayer must be engaged in the activity with continuity and regularity. See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). The income derived from consulting and lecturing was not earned from activities in which petitioner engaged with continuity and regularity. Therefore, this income would not be reported on separate Schedules C for each activity.

[4] After trial, respondent moved to amend his pleadings to conform to the evidence and to seek an increased deficiency. See sec. 6214(a); Rule 41. Petitioners had no objection, and the motion was granted. Based upon respondent's amendment to answer, the deficiency for 1993 is unchanged, the deficiency for 1994 is increased to $2,888, and the deficiency for 1995 is decreased to $6,362. This is based on the recharacterization of the income claimed on Schedules C and a pension income adjustment for 1995 in petitioners' favor. There are also Social Security benefit adjustments which are computational.

Writing Activity

After serving 2 years in the military, petitioner was employed by Rocketdyne, Inc., as a scientist and engineer for 35 years. As part of his employment, petitioner wrote technical and scientific proposals. Petitioner retired from Rocketdyne in 1990. Following retirement, petitioner continued employment as a scientist and engineer to Rocketdyne and other defense contractors on an independent contractor basis during 1990 and 1991.

While employed by Rocketdyne, petitioner wrote articles for the public in his spare time. Petitioner submitted the articles to various periodicals and publishers, but none of them were chosen for publication. According to records provided by petitioner, he has been submitting articles since 1978. Petitioner desired to write novels, but he did not have the time. Petitioner decided to pursue his writing activity, including writing novels, on a full time basis in 1992. During the years in issue, petitioner continued to write and submit articles; however, none were chosen for publication. Many of the articles petitioner wrote contained contemporary political commentary. Petitioner also wrote articles about guns and travel. In researching for the gun articles, petitioner purchased guns and gun-related supplies, such as bullets, powder, a chronograph device (which measures the velocity of bullets when fired from a

gun), a scope and mount for rifles, and cleaning supplies. Petitioner has had an interest in guns since he was a child. Petitioner tested the performance of the guns and wrote articles on his findings. Petitioner submitted the articles to the National Rifle Association and various gun-related publications. There was no interest in petitioner's articles.[5]

Petitioner was interested in selling a novel because he thought it would pay a lot more than articles. In late 1992, petitioner submitted two novels (or portions thereof) to literary agents. Petitioner did not have a contract with either agent. One agent passed on the novel submitted to him, and the other agent recommended that petitioner finish the novel and resubmit it with $400. Petitioner completed the novel and resubmitted it with $400, which was against petitioner's policy of paying out money to agents. It was not selected for publishing.

In doing research for the articles and novels, petitioner traveled to various places. Petitioner would research the area and take pictures. Petitioner's wife often accompanied him on these trips. Petitioner occasionally took courses related to the topics he wanted to write about.

There is a lot of competition in the literary field. Petitioner believes he could have been published without pay, but

---

[5] The National Rifle Association informed petitioner that they have their own technical staff to conduct gun testing.

he sought to receive compensation for his articles. Petitioner attended a writing conference "early on", but he did not find it helpful. Petitioner did not consult with any experts in the writing field about conducting a profitable writing activity. He did not take any courses on writing fictional material or writing for the public. Petitioner did not belong to any literary organizations. Petitioner studied on his own by analyzing Writer's Digest.

Petitioner regularly analyzed literary agents and publishers to determine where he would send his material. Petitioner wrote to various publishers seeking employment either freelance or as a staff writer. He did not obtain any employment from the agencies.

On Schedules C filed with petitioners' 1993, 1994, and 1995 returns, petitioners claimed the following expenses with respect to his writing activity:

| Expense | 1993 | 1994 | 1995 |
|---|---|---|---|
| Car and truck | $1,220 | $618 | $1,234 |
| Commissions and fees | 1,056 | 170 | 187 |
| Depreciation | 2,567 | 5,430 | 17,569 |
| Insurance | 1,238 | 1,398 | 1,795 |
| Legal and professional | 4,398 | 293 | 1,107 |
| Office | 462 | 375 | 987 |
| Rent- business prop | 284 | 349 | 392 |
| Repairs and maint. | 1,790 | 220 | -0- |
| Supplies | 2,196 | 3,124 | 1,273 |
| Taxes and licenses | 265 | 199 | 186 |
| Travel | -0- | 720 | 920 |
| Publications | 552 | 734 | 1,848 |
| Total[1] | 16,028 | 13,630 | 27,498 |

¹ Our totals differ slightly from the totals on petitioners' returns due to our rounding of the numbers.  We also note that there is a mathematical error in the return for tax year 1995.

Up to the time of trial, petitioner has not sold any of his articles or novels.  One article on the rocket industry was published in a history book in 1997 without pay.

Petitioner reported no income from his writing activities.  Respondent contends that petitioner is not entitled to claim any deductions because petitioner's writing activity was not engaged in for profit.

Section 183(a) generally provides that if an activity engaged in by an individual is not entered into for profit, no deduction attributable to the activity shall be allowed, except as otherwise provided in section 183(b).  Section 183(c) provides:  "For purposes of this section, the term 'activity not engaged in for profit' means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."  "Profit" for purposes of section 183(a) means economic profit, independent of tax savings.  See Antonides v. Commissioner, 91 T.C. 686, 694 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Hulter v. Commissioner, 91 T.C. 371, 393 (1988).

Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity or continued the activity with the

actual and honest objective of making a profit. See <u>Keanini v. Commissioner</u>, 94 T.C. 41, 46 (1990); <u>Dreicer v. Commissioner</u>, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. In making this determination, more weight is accorded to objective facts than to the taxpayer's statement of intent. See <u>Engdahl v. Commissioner</u>, 72 T.C. 659, 666 (1979); sec. 1.183-2(a), Income Tax Regs.

The regulations under section 183 provide nine nonexclusive factors to be used in determining whether a taxpayer is engaged in an activity with the objective to make a profit. See sec. 1.183-2(b), Income Tax Regs. The factors are: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. See <u>id.</u> No single factor is controlling. Rather, the facts and circumstances of the case taken as a whole are determinative. See <u>Abramson v. Commissioner</u>, 86 T.C. 360, 371 (1986); sec. 1.183-2(b), Income Tax Regs.

Taking into account the above factors and considering the facts and circumstances relating to petitioner's writing activity, as discussed more fully below, we are not persuaded that during the years in issue petitioner engaged in that activity with the objective to make a profit.

## 1. Manner in Which Activity Conducted

The fact that a taxpayer carries on an activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity was engaged in for profit. See sec. 1.183-2(b)(1), Income Tax Regs.

Petitioner managed some aspects of this activity in a businesslike fashion. He maintained records of his expenses and regularly researched and submitted articles and novels to the various periodicals and literary agents. Some of petitioner's activities belied any profit objective. For instance, the income-producing potential of petitioner's gun experiments seemed to be of little concern to petitioner. Petitioner was not an expert in gun testing, yet he incurred gun-related expenses to conduct his tests without first researching whether there would be an interest in such findings from a lay person. Petitioner decided to conduct gun testing, incurring expenses, regardless of the amount of income he could objectively expect from a gun article.

Petitioner stated at trial that selling articles did not pay well, and he offered no indication as to how much he could receive from the sale of an article. Petitioner testified that the sale of a novel would pay well, but no amount was offered nor has he had a contract with a literary agent since he started the activity. Petitioner did not explain how he expected to recoup the $57,156 in losses.

Petitioner argues that he did have a profit objective since he submitted articles only to periodicals that offered compensation. However, petitioner's articles were not accepted for publication for a number of years (at least since 1978), and it does not appear that petitioner attempted to develop a strategy to get published or made changes in order to succeed.

Petitioner did submit his two novels to two literary agents prior to the years at issue. Petitioner did not enter into any contracts with the agents. It is not clear from the record whether petitioner submitted any novels to agents during the years at issue.

## 2. Expertise of Petitioner and His Advisers

Preparation for an activity by extensive study or consultation with experts may indicate a profit objective where the taxpayer conducts the activity in accordance with such study or advice. See sec. 1.183-2(b)(2), Income Tax Regs.

Petitioner did not seek expert advice on how to start or maintain a business as a fiction writer or as a writer of political commentary or about guns. Petitioner did not consult with anyone on the economics of conducting a writing activity. While petitioner had writing skills, they were in the technical field of engineering and science. Although his articles about guns were rather technical, petitioner did not have a background on gun testing. Petitioner did not join any literary organizations to learn more about the industry. Petitioner did attend a writing conference "early on", but he did not find it helpful.

### 3. Time and Effort Expended

The fact that the taxpayer devotes much of his or her personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate a profit objective. See sec. 1.183-2(b)(3), Income Tax Regs.

We do not question the amount of time petitioner expended in carrying on the writing activity. Suffice it to say that he devoted a great deal of time researching, testing, and writing about the topics that interested him.

### 4. Expectation That Assets May Appreciate

An expectation that assets used in the activity will appreciate in value may indicate a profit objective. See sec. 1.183-2(b)(4), Income Tax Regs.

Petitioner contends that the guns he purchased will appreciate in value. This was based on petitioner's own estimation, and he offered no evidence to support his contention that the value of the guns is sufficient to recoup the accumulated losses. In any event, it would seem that collecting guns is a different activity from writing about them.

### 5. Past Success in Similar or Dissimilar Activities

A taxpayer's past success in similar or dissimilar activities is relevant in determining a profit objective. See sec. 1.183-2(b)(5), Income Tax Regs.

Petitioner contends that he was successful as a writer for Rocketdyne and that he considers himself a professional writer because of his employment with Rocketdyne. When employed by Rocketdyne, petitioner wrote technical or scientific proposals for the company. Presumably, petitioner was a skilled and talented technical writer. This is quite different from writing articles and novels for the public. Furthermore, petitioner did not have to market the writing that he performed for Rocketdyne.

## 6. The Activity's History of Income and/or Loss

An activity's history of income or loss may reflect whether the taxpayer has a profit objective. See sec. 1.183-2(b)(6), Income Tax Regs. Unless explained by customary business risks or unforeseen or fortuitous circumstances beyond the taxpayer's control, a record of continuous losses beyond the period customarily required to obtain profitability may indicate that the activity is not engaged in for profit. See id.

Petitioner has not earned any income from the writing activity, and he has incurred substantial losses during the 3 years in issue. It is not clear from the record the amount of losses that were claimed in prior years.[6] During the years in issue, petitioners deducted $57,156 of losses attributable to the writing activity. The magnitude of the activity's losses in comparison with the lack of revenues is an indication that petitioner did not have a profit motive with respect to the activity. See Smith v. Commissioner, T.C. Memo. 1997-503; Burger v. Commissioner, T.C. Memo. 1985-523. Furthermore, many businesses do experience losses in their startup years, but they typically have a goal to realize a profit including enough net earnings to recoup the losses.

---

[6] Petitioner stated that he wrote and submitted articles on a part-time basis from 1978 to 1991, after which he focused on his writing activity full time. However, it is not clear from the record when petitioner started treating his activity as a Schedule C business.

### 7. Amount of Occasional Profits

The amount of occasional profits, if substantial in relation to losses incurred or the taxpayer's investment, may indicate a profit objective.  See sec. 1.183-2(b)(7), Income Tax Regs.

In this case, petitioner has never earned a profit from his activity, and the evidence suggests that any future net profits are unlikely.

### 8. Taxpayer's Financial Status

Substantial income from sources other than the activity, particularly if the losses from the activity generate substantial tax benefits, may indicate that the activity is not engaged in for profit, especially if there are personal or recreational elements involved.  See sec. 1.183-2(b)(8), Income Tax Regs.

During the years in issue, petitioners received Social Security benefits, pension, interest, and dividend income. Petitioners were by no means wealthy; however, the losses from the activity greatly reduced their tax liability.

### 9. Elements of Personal Pleasure

The existence of personal or recreational elements in an activity may indicate that the activity is not engaged in for profit; on the other hand, where an activity lacks any appeal other than profit, a profit objective may be indicated.  See sec. 1.183-2(b)(9), Income Tax Regs.

It is obvious that petitioner enjoyed writing and derived personal satisfaction in sharing his opinions and research. Petitioner acknowledged that he conducted tests on guns and wrote about guns because that is a personal interest of his. Petitioner and his wife also traveled for his research, which has elements of personal pleasure.  Where the possibility of profit is small (given all the other factors) and the possibility for gratification is substantial, it is clear that the latter possibility constitutes the primary motivation for the activity. See Smith v. Commissioner, supra (citing Burger v. Commissioner, supra).

Because petitioner's writing activity was not an activity engaged in for profit, the activity cannot be considered a trade or business for purposes of section 162(a).  Petitioners are not allowed deductions for the expenses claimed for all years in issue.  In view of the foregoing, we need not consider the third issue of whether petitioners' Schedule C expenses are ordinary and necessary and whether they have been substantiated.

Based on the foregoing,

Decision will be entered under Rule 155.